

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0754-10

**FRANKIE LEE CADA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### HALE  COUNTY

COCHRAN, J., delivered the opinion of the unanimous Court.

### O P I N I O N

We granted review of this retaliation case to determine whether a variance between

the indictment allegation of one statutory element–the description of the complainant as "a

witness"–is material when the proof shows that the complainant was either a "prospective

witness" or "an informant"–two different statutory elements.[1]  The court of appeals decided

---

[1] Appellant's four grounds of review are as follows:

1.    The Seventh Court of Appeals erred in holding that the variance between the indictment allegation that petitioner retaliated against a "witness" and the proof that he retaliated against a "prospective witness" does not constitute a material variance as described in

that this variance was immaterial and the evidence therefore legally sufficient to support appellant's conviction of retaliation.[2]  We hold that a variance between the pleading of one statutory element ("a witness") and proof of a different statutory element ("a prospective witness" or "an informant") is material under *Gollihar*.[3]  Therefore, the evidence was legally insufficient to support appellant's conviction for retaliation as the offense was pled.

I.

Appellant was charged with the third-degree felony of retaliation for "intentionally and knowingly threaten[ing] to harm another, to-wit: Arthur Finch, by an unlawful act, to-wit, assault, in retaliation for or on account of the service of the said Arthur Finch as a witness."

At trial, Arthur Finch testified that he works full-time as a jailer at the Hale County Sheriff's Office, but he also works part time at the local Allsup's convenience store.  He was on the graveyard shift at Allsup's when, close to 2:00 a.m., he got worried because a car had been parked near the store for about ten to fifteen minutes, but no one had come inside.  Mr.

---

*Gollihar v. State*.
2.    Does the variance between the indictment and proof at trial regarding the status of protected persons identified in Section 36.06 of the Texas Penal Code constitute a material variance under the analysis required by *Gollihar v. State*?
3.    Does *Gollihar* allow an appellate court to expand the theories of criminal responsibility of an appellant beyond those alleged in the indictment and submitted in the jury charge?
4.    Does *Gollihar* limit all material variance analyses to the variance/notice analysis set forth by the majority opinion in that case?

[2] *Cada v. State*, No. 07-09-00054-CR, ___ S.W.3d __, 2010 WL 2044466 *4 (Tex. App.–Amarillo May 24, 2010).

[3] *Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001).

Finch said that he walked outside to check and saw somebody moving around inside the car, "so I got a little bit nervous and everything, so I called the police thinking, hopefully, these guys aren't going to try to rob me."

The police arrived, and Mr. Finch saw them talk to the people in the car. Then everyone left. He couldn't see the people in the car and didn't recognize anyone.

About twenty minutes later, the phone at Allsup's rang. When Mr. Finch picked it up, he heard a voice saying, "[H]ey, you know man, you f____ed up. You know my wife–you got my wife arrested and you didn't need to call the cops." Then the caller said that he was Frank Lee Cada and told Mr. Finch, "[Y]ou're going to pay." Mr. Finch explained that he had nothing to do with Mrs. Cada's arrest, he had just called the police for his own safety. But Mr. Finch was concerned enough about the caller that he phoned the police again to report the incident.

Ten minutes later, Mr. Finch got another phone call. The caller did not identify himself, but Mr. Finch recognized the voice as being that of the person who had made the earlier call. Appellant said, "[H]ey, I am behind the store and I am going to get you." Mr. Finch asked appellant to come to the front and talk with him, but appellant responded, "[Y]ou know you're going to pay." Appellant then said that he was going to get back at Mr. Finch's family since appellant's wife went to jail because Mr. Finch had called the cops.

Mr. Finch then pushed the Allsup's "panic button" to summon the police. Officers arrived, searched around the store, but did not find anyone. They also went to Mr. Finch's

home to check on his family's safety.  Mr. Finch felt threatened by appellant's phone calls and was worried that "if he is going to come in, if he has a weapon I was–I am stuck right here in this one spot."

Officer Ward, a  Plainview policeman, testified that he and two other officers were dispatched to Allsup's that night at about 1:45 a.m. to check on a "suspicious vehicle."  He arrived and found a blue Honda Accord parked near the store. There were five people in the car–appellant, his wife, Adam Cisneros, and two children, ages seven and twelve.  After Officer Ward identified them all, he "ran them through dispatch to check for any possible warrants."  Appellant's wife, Josie, had an outstanding warrant, so she was placed under arrest.  Appellant, sitting in the passenger's seat, became angry and "began removing his jacket, popping his knuckles and his neck and stating to the driver, 'Adam, there's only three of them. We can take them.'"  He wanted to know why the officers were called and why "we were messing with him."  Officer Ward explained that the Allsup's clerk had called because he was concerned about the late hour and where the car was parked because of recent robberies.  When the clerk came outside, appellant began yelling and pointing his finger at him.  Another officer was so concerned about appellant's anger that he took out his Taser, but it was not necessary to use it.

Officer Ward received two further calls from Allsup's that night– the first at 2:12 a.m. and the second, a panic alarm, at 2:24.  Officer Ward again responded, found Mr. Finch "extremely shaken and emotionally upset," so he searched for appellant, but did not find him.

After the State rested, appellant moved for a directed verdict because there was no evidence that appellant threatened to harm Mr. Finch because of his service as a witness. After some discussion, the trial judge denied that motion.

Appellant then testified. He said that he had previously been convicted of burglary, terroristic threat, and resisting arrest. He testified that he and his family picked up his cousin, Adam Cisneros, that night, and then they all went to Allsup's where they sat in the car rolling pennies to buy some snacks. When the police arrived, the officers asked for everyone's names and then arrested his wife on a motion-to-revoke-probation warrant stemming from a misdemeanor hot-check case. Appellant admitted that he was mad when he phoned Mr. Finch and called him "a punk m____ f___" and told him he was "a sorry person," but he did not know that Mr. Finch had been a witness to anything. He said that he was sorry for what happened that night, but he did not think it was suspicious for him to park his car at Allsup's and sit in it for fifteen minutes.

In both opening and closing argument, defense counsel contended that appellant was guilty of telephone harassment and disorderly conduct, but that he did not commit retaliation because Mr. Finch had not been a witness to anything. The State argued that appellant was guilty of retaliation: "He threatened him because Arthur Finch called the police. That's why he threatened him. Because Arthur Finch called the police."

The jury charge tracked the indictment, requiring the jury to find that appellant threatened to harm Mr. Finch because of his service as a witness before it could convict for

retaliation.  During their deliberations, the jury sent out a note, asking for the definition of the word "witness," but the judge said that there is no statutory definition of that term, so he told the jury to consider only the instructions that had already been given.  The jury found appellant guilty of retaliation and assessed his punishment at three years in prison.

On appeal, appellant argued, *inter alia*, that the evidence was legally insufficient to support his conviction for retaliation against a witness because Mr. Finch never testified or provided any "service" in any proceeding as a "witness." He relied on *Jones v. State*,[4] in which this Court held that the statutory term "witness" in the retaliation statute means "one who *has* testified in an official proceeding."[5]  The court of appeals noted *Jones*, but held that use of the word "witness" was  an immaterial variance because it was "not a variance in the manner and means of committing the crime of retaliation."[6]  This variance concerned the statutory status of the protected person, and the court of appeals had previously held that "the variance between the allegation of one classification of protected person for the victim and the proof of a different classification of protected person was simply irrelevant."[7]  The court of appeals concluded that Mr. Finch was "a prospective witness," the evidence was sufficient to prove that status, and therefore the evidence was legally sufficient to support his

---

[4] 628 S.W.2d 51 (Tex. Crim. App. 1980).

[5] *Id.* at 55.

[6] *Cada v. State*, No. 07-09-00054-CR, ___ S.W.3d __, 2010 WL 2044466 *3 (Tex. App.– Amarillo May 24, 2010).

[7] *Id.* at *4 (citing *Hudspeth v. State*, 31 S.W.3d 409, 412 (Tex. App.–Amarillo 2000, pet. ref'd)).

conviction for retaliation.[8]

## II.

### A.    Persons Protected Under the Retaliation Statute.

A person commits the felony offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for the service or status of another as a public servant, witness, prospective witness, or informant.[9] The "service" or "status" of the complainant as a "public servant," "witness," "prospective witness" or "informant" are all differing elements of the underlying offense.[10] Indeed, the retaliation statute is a good example of the "Chinese Menu" style of setting out the elements of a penal offense. Section 36.06(a)(1)(A) of the retaliation statute contains eight different elements, but several of those elements include distinct alternatives, which may or may not be included in a particular indictment and jury charge. Those elements and alternative elements are:

(1)    The Defendant

(2)    a.    intentionally [or]
        b.    knowingly

(3)    a.    harms [or]
        b.    threatens to harm

---

[8] *Id.*

[9] TEX. PENAL CODE § 36.06(a)(1)(A).

[10] *See Benson v. State*, 661 S.W.2d 708, 711, 714 (Tex. Crim. App. 1982) (distinguishing between the elements of a "witness" and a "prospective witness" in retaliation statute), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).

(4)     another person

(5)     by an unlawful act

(6)     a.      in retaliation for [or]
        b.      on account of

(7)     a.      the service of another [or]
        b.      the status of another

(8)     as a
        a.      public servant
        b.      witness
        c.      prospective witness [or]
        d.      informant.[11]

The indictment and jury charge must contain at least one item from each numbered

element, but it may contain more than one alternative element (e.g., the indictment might list

"a public servant, witness, prospective witness, or informant"[12]).  It is well established that

---

[11] TEX. PENAL CODE § 36.06(a)(1)(A).  Subsection (B) sets out yet another alternative for the eighth element: "person who has reported or who the actor knows intends to report the occurrence of a crime."

[12] *See, e.g., In re B.P.H.*, 83 S.W.3d 400, 407-08 (Tex. App.–Fort Worth 2002, no pet.) (State alleged "witness or prospective witness" and was required to prove one or the other); *Hastings v. State*, 82 S.W.3d 493, 494-95 (Tex. App.–Austin 2002, pet. ref'd) (indictment alleged "witness or prospective witness"; evidence was sufficient to prove that defendant believed complainant whom he threatened could be a potential witness against him); *Cover v. State*, 913 S.W.2d 611, 617 (Tex. App.–Tyler 1995, pet. ref'd) (indictment alleged that complainant was "a witness and a prospective witness"); *Cochran v. State*, 783 S.W.2d 807, 811 (Tex. App.– Houston [1st Dist.] 1990, no pet.) (retaliation indictment alleged that complainant was an "informant" as well as a "prospective witness"; because evidence showed that the complainant was an "informant," there was no fatal variance between the indictment and the proof even if evidence showed that the complainant was also a "witness" rather than a "prospective witness" as alleged); *Gibson v. State*, 769 S.W.2d 706, 709-10 (Tex. App.–Eastland 1989) (indictment alleged that complainant was "a prospective witness and informant"), *rev'd on other grounds*, 803 S.W.2d 316 (Tex. Crim. App. 1991).

the State may plead in the conjunctive and charge in the disjunctive.[13]  Thus an indictment might contain allegations that the defendant retaliated against the complainant because he was "a public servant, witness, prospective witness, and informant," and if the proof shows any one of those statutory alternative elements beyond a reasonable doubt, then the evidence is sufficient to support a conviction.[14]

A central purpose of the retaliation statute is to encourage a specified class of citizens–which includes public servants, witnesses, prospective witnesses, and informants– to perform vital public duties without fear of retribution.  "Those public duties may include reporting criminal activities, testifying in official proceedings, or cooperating with the government in a criminal investigation."[15]  The Legislature keeps increasing that statutorily protected class to ensure that all of those who participate in the administration of justice may do so without fear of harm or physical injury.  In *Jones v. State*,[16] this Court held that the

---

[13] *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *see also Hunter v. State*, 576 S.W.2d 395 (Tex. Crim. App. 1979) (State could allege mental states of "intentionally *or* knowingly" in indictment; holding that disjunctive pleadings were proper, and overruling all previous cases to the contrary).

[14] *See Kitchens*, 823 S.W.2d at 258 ("[i]t is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted"); *see also Bagheri v. State*, 119 S.W.3d 755, 762 & n.5 (Tex. Crim. App. 2003) (State may allege alternate theories of intoxication in DWI information and "when the trial court submits a jury charge setting out alternate means of committing an offense (or alternate ways to prove a specific element), the evidence is sufficient to support a general verdict of guilty of the statutory offense if the evidence is sufficient to prove any one of those alleged means.").

[15] *Morrow v. State*, 862 S.W.2d 612, 615 (Tex. Crim. App. 1993).

[16] 628 S.W.2d 51 (Tex. Crim. App. 1980).

word "witness" in the retaliation statute refers only to a person who has already testified in some official proceeding.[17]  This holding left a large number of citizens who had or were expected to assist the criminal and civil justice systems outside the scope of protection. Therefore, in 1983, the Legislature amended the retaliation statute to include a "prospective witness" within the protected class, and, in 1989, it extended protection to "a person who has reported the occurrence of a crime."[18]  The Legislature again expanded the statutory protections afforded this class of citizens by adding "or one who the actor knows intends to report" to the phrase "a person who has reported the occurrence of a crime" in 1993.  Finally, in 1997, it added the alternative of "status," as well as "service," as a member of any one of the protected categories.[19]  Thus, "the legislature [has] attempted to account for every category of person who might possess information regarding criminal activity which may lead to the apprehension of a criminal offender.  We can conceive of no existing gap in the persons protected under section 36.06."[20]

It is not always easy to categorize a particular citizen who has been subject to retaliation into one specific box (such as "status as a prospective witness") to the exclusion of all other categories (such as "service as an informant").  But, as this Court has previously

---

[17] *Id.* at 55.

[18] *See* Acts 1983, 68th Leg., ch. 558, § 4; Acts, 1989, 71st Leg., ch. 557, § 1.

[19] *See* Acts 1993, 73rd Leg., ch. 900, § 1.01; Acts, 1997, 75th Leg., ch. 239, § 1.

[20] *Morrow*, 862 S.W.2d at 615.

noted, "[w]hile there may be some overlap among the categories of persons listed, each category is nevertheless distinct."[21]

In *Morrow v. State*, this Court explained the distinction between some of the various categories. We said that an "informant" is defined in the Penal Code as "a person who has communicated information to the government in connection with any governmental function,"[22] but we noted that "[t]here are a number of reasons an informant would not be considered a prospective witness."[23]  For example, an informant may not have first-hand knowledge of a crime; he may not have revealed his identity when he reported something to the government; the government may not wish to divulge his identity; the informant may not have reported an actual crime because "[i]nformants often communicate information about criminal activity that is *about* to occur, rather than criminal activity that has already occurred."[24]  Or he could report "suspicious" activities which may or may not turn out to be a crime.  Similarly, a person who is a "prospective witness" may not necessarily be a person who has reported  the occurrence of a crime to government, or he may not have said anything at all to governmental agents.[25]  Thus, when there is overlap or uncertainty concerning the status or service of a particular person within the protected general class, the State may plead

---

[21] *Id*. at 614.

[22] TEX. PENAL CODE § 36.06(b)(2).

[23] *Morrow*, 862 S.W.2d at 614.

[24] *Id*. at 614-15.

[25] *Id.*

alternatives in the indictment.[26]

**B.      Sufficiency of the Evidence and Material Variances.**

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged.[27]  We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge.[28]  Such a charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[29]

But, in *Gollihar v. State*, we held that, under state law, the hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances.[30] In *Gollihar,* the indictment for theft of a go-cart stated that the go-cart was "Model 136202," but the State's evidence showed that its model was 136203.  That variance was immaterial because the State did not have to plead any model or serial number to describe the property stolen and there was no suggestion that the defendant was surprised or harmed by the evidence offered

---

[26] *See, e.g., Webb v. State*, 991 S.W.2d 408, 417 (Tex. App.– Houston [14th Dist.] 1999, pet. ref'd) (State had pled, and therefore had to prove, that the defendant "intentionally or knowingly intended to harm [complainant] by an unlawful act in retaliation for or on account of her service as a prospective witness, as a person who has reported the occurrence of a crime, or a person who [defendant] knew intended to report the occurrence of the crime.").

[27] *Jackson v. Virginia*, 443 U.S. 307, 313 (1979).

[28] *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[29] *Id.*

[30] *Gollihar v. State,* 46 S.W.3d 243, 256 (Tex. Crim. App. 2001).

at trial.[31]  The model number was not an element of the offense, and the defendant's guilt or innocence of the theft charge did not depend upon the specific model of the go-cart.  Further, there was no suggestion that the defendant possessed numerous go-carts with different model numbers, or that he was misled about which specific go-cart the State would prove he stole.[32]

The focus of the inquiry under both *Malik* and *Gollihar* "is upon the elements of the offense."[33]  And, of course, before something may be an element of the offense in the hypothetically correct jury charge, it must be "authorized by the indictment."[34]  For example, if the penal offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually alleged

---

[31] *Id.* at 258.

[32] *Id*. ("There is no indication in the record that appellant did not know what cart the State was claiming he stole or that appellant was misled by the allegation or surprised by the proof at trial. . . . Appellant did not attempt to raise a defense that he did not take the cart alleged or that the State had misidentified the allegedly stolen property.").

[33] *Id.* at 258 (Keller, P.J., concurring).  Addressing what is meant by a hypothetically correct charge being "authorized by the indictment," the majority in *Gollihar* explained that

> when the controlling statute lists several alternative acts intended by the defendant and the indictment limits the State's options by alleging certain of those intended acts, the hypothetically correct charge should instruct the jury that it must find one of the intended acts alleged in the indictment. This is the "law" as authorized by the indictment. Similarly, when the statute defines alternative methods of manner and means of committing an element and the indictment alleges only one of those methods, "the law" for purposes of the hypothetically correct charge, is the single method alleged in the indictment.

*Id.* at 254-55 & n. 20 (footnotes and citations omitted).

[34] *Id.* at 258 (Keller, P.J., concurring).

in the indictment.[35]    And the sufficiency of the evidence is measured by the specific

alternative elements that the State has alleged in the indictment.  Thus, if the State pleads one

specific element from a penal offense that contains alternatives for that element, the

sufficiency of the evidence is measured by the element that was actually pleaded, not any

other statutory alternative element.[36]    That is what federal due process and *Jackson v.*

*Virginia* require–proof beyond a reasonable doubt to support every element of the offense

alleged.[37]    The Texas "immaterial variance" law as set out in *Gollihar* does not apply to the

specific statutory elements alleged in the indictment.[38]

---

[35] *Id.* (discussing *Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000)).  In *Curry*, the indictment alleged only one of the two statutory ways to "abduct" someone–by using or threatening to use deadly force.  *Curry*, 30 S.W.3d at 405.  The State therefore could not change or expand its theory of liability to include the second statutory definition of "abduct" in the jury charge or for purposes of reviewing the sufficiency of the evidence.  *Id.*

[36]*See Planter v. State*, 9 S.W.3d 156, 159 (Tex. Crim. App. 1999) (holding that the State was restricted to proof of the one statutory theory of solicitation of capital murder that it had alleged; evidence insufficient to prove that theory, even though it was sufficient to prove the unpled statutory alternative); *see also Fuller v. State*, 73 S.W.3d 250, 255-56 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (stating that the *Gollihar* "variance" doctrine does not apply to statutorily-enumerated elements); *Macias v. State*, 136 S.W.3d 702, 705-06 (Tex. App.–Texarkana 2004, no pet.) (fatal variance existed between indictment and proof on charge of unlawful possession of a firearm by a felon; indictment tracked language only of first subsection of statute, which concerned possessing firearm within five years of release from confinement, not second subsection, concerning possessing firearm at location other than residence, and evidence did not show that defendant's possession of pistol was within five years after his release from probation; evidence insufficient to support conviction).

[37] *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979) ("[T]he due process standard recognized in *Winship* constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt.").

[38] *See, e.g., Smith v. State*, 135 S.W.3d 259, 262 (Tex. App.–Texarkana 2004, no pet.) ("The *Gollihar* construct, therefore, does not apply to our analysis of [the defendant's] *Jackson v.*

III.

In the present case, the State alleged that appellant retaliated against Mr. Finch "on account of the service of the said Arthur Finch as a witness." The State, the defense, and the court of appeals all agree that there was not a scintilla of evidence that Mr. Finch provided any service as a "witness" as that statutory element was defined in *Jones*. Under *Jones,* the State was required to prove that Mr. Finch "*has* testified in an official proceeding" and that appellant retaliated against him on account of, or because of, that service as a witness in an official proceeding.[39] Thus, appellant properly requested a directed verdict after the completion of the State's case, and he properly argued on appeal that the evidence was legally insufficient to prove an essential element of the offense under *Jackson v. Virginia*. Under *Jackson*, he was entitled to an acquittal.

However, both the State and the court of appeals recognized that Mr. Finch is clearly a member of the general class of citizens that the Legislature intended to protect against retaliation. He saw a car parked outside the Allsup's for a lengthy period of time when it was late at night and he was the only clerk in the store. He became worried and suspicious that whoever was in that car might be planning a robbery. So he did what we want concerned citizens to do: he called the police and reported his suspicions. He did not see a crime, but

---

*Virginia* evidentiary sufficiency claim" concerning proof of the statutory elements alleged; indictment for attempted sexual assault alleged that defendant attempted to penetrate victim's sexual organ, thus proof that he attempted to penetrate the victim's mouth and anus was insufficient, under *Jackson*, to prove the alleged element).

[39] *Jones v. State*, 628 S.W.2d 51, 55 (Tex. Crim. App. 1980).

he was worried that one might be in the offing. At that point in time, Mr. Finch was an "informant" for purposes of the retaliation statute. He "communicated information to the government in connection with [a] governmental function."[40] Furthermore, that is precisely why appellant twice called Mr. Finch at the Allsup's later that evening and threatened him. Appellant told Mr. Finch that he was going to "get back" at him because Mr. Finch had called the police, and, as a result, appellant's wife was arrested on an unrelated open warrant. In his second phone call, appellant told Mr. Finch that he was going to get back at Mr. Finch's family because appellant's wife had gone to jail because Mr. Finch had called the police. The State was exactly correct when it argued to the jury that appellant "threatened him because Arthur Finch called the police. That's why he threatened him. Because Arthur Finch called the police"–not because Mr. Finch had testified against him as a witness in an official proceeding, not because Mr. Finch might be a prospective witness at some future trial or proceeding, but because Mr. Finch had already served as an informant by calling the

---

[40] TEX. PENAL CODE § 36.06(b) ("In this section, 'informant' means a person who has communicated information to the government in connection with any governmental function."); *see Morrow v. State*, 862 S.W.2d 612, 615 (Tex. Crim. App. 1993) ("Informants often communicate information about criminal activity that is *about* to occur, rather than criminal activity that has already occurred."); *Sewell v. State*, 629 S.W.2d 42, 44 (Tex. Crim. App. 1982) (burglary victim who called police and reported that defendant committed burglary was an "informant" for purposes of retaliation statute; she communicated information to the police "in connection with their function of ferreting out crime"); *Jones v. State*, 628 S.W.2d 51, 57 (Tex. Crim. App. 1981) (op. on reh'g) (stating that a person who "perceives an event and relays the information gained to the police" qualifies as an "informant" under the retaliation statute); *Cochran v. State*, 783 S.W.2d 807, 811 (Tex. App.–Houston [1st. Dist.] 1990, no pet.) (for purposes of retaliation statute, "complainant acted as an informant by reporting to the police the facts necessary to convict appellant for retaliation the first time").

police.  Unfortunately, that is not what the State alleged in its indictment.  Instead of pleading the correct element of "informant," or pleading several of the statutory alternatives ("witness, prospective witness, or informant" or "person who has reported or who the actor knows intends to report the occurrence of a crime")  and then including only those for which there was some evidence given to the jury for its consideration, the State alleged a single element for which there was no evidence.

The court of appeals held that this was an immaterial mistake or variance because the evidence was sufficient to show that Mr. Finch was a "prospective witness" and appellant "has never contended that the variance at issue resulted in an inability to adequately mount a defense."[41]  First, the evidence is not sufficient to show that appellant retaliated against Mr. Finch because of his service (or even his status) as a prospective witness.[42]  There is no evidence to suggest that appellant had any notion that Mr. Finch would perform any witness-type services in the future, and that is not why he threatened him.  The evidence shows that appellant threatened him solely because of a past, completed act–calling the police.  Second,

---

[41] *Cada*, 2010 WL 2044466 at *4.  As to this latter assertion, appellant's whole and sole defense was that he did not retaliate against Mr. Finch for any service as a witness.  This was his argument in opening, in his motion for a directed verdict, and in his closing statement.  It was the sole theory of defense.  Indeed, this issue was also of concern to the jury because it sent out a note requesting a definition of the term "witness" as it is used in the jury charge.  The meaning of the statutory word "witness" was apparently material to the jury.

[42] Indeed, although it is within the realm of possibility that Mr. Finch might have the "status" of a prospective witness if the circumstances surrounding the arrest of Mrs. Cada on an open warrant were ever litigated, it is not particularly likely, as his only role was to call the police about a suspicious car whose occupants he never saw.

even though there may be some overlap and considerable commonality between the various statutory categories of protected persons under the retaliation statute, they are distinct and separate statutory elements of the offense. Under *Jackson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory elements that it did not allege. The variance construct of *Gollihar* and *Fuller*[43] simply does not override the constitutional due-process requirement that the State prove, beyond a reasonable doubt, every statutory element of the offense that it has alleged.

We therefore reverse the judgment of the court of appeals and enter an acquittal because the evidence was legally insufficient to prove that appellant retaliated against Mr. Finch "on account of his service as a witness."

Delivered: February 9, 2011
Publish

---

[43] *Fuller v. State*, 73 S.W.3d 250, 255-56 (Tex. Crim. App. 2002).