NO. 07-11-00009-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 13, 2011

_____

IN THE MATTER OF J.S.R., A CHILD

_____

FROM THE COUNTY COURT AT LAW OF MOORE COUNTY;

SITTING AS A JUVENILE COURT

NO. 1455; HONORABLE DELWIN T. MCGEE, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

The juvenile court of Moore County adjudicated appellant J.S.R. delinquent for committing the offense of retaliation[1] and committed him to the custody of the Texas Youth Commission for an indeterminate period not beyond his nineteenth birthday. On appeal, J.S.R. challenges the sufficiency of the evidence and asserts the existence of a material variance in the State's pleading and proof. Finding the evidence was not sufficient to prove the charged offense beyond a reasonable doubt, we will reverse and render judgment of acquittal.

---

[1] Tex. Penal Code Ann. § 36.06(a)(1)(A) (West 2011).

## Background

In its petition, the State alleged:

On or about the 20th day of October, 2010 [J.S.R.] did then and there, in the County of Moore, State of Texas, intentionally or knowingly threaten to harm another, to-wit: Rob Groves, by an unlawful act, to-wit: threaten bodily harm, in retaliation for or on account of the status of Rob Groves as Assistant Principal of Dumas High School suspending said [J.S.R.] from school for misconduct.

At the adjudication hearing, the State's evidence was developed largely through the testimony of Mr. Groves. On October 20, 2010, he decided to suspend J.S.R. from school for a classroom discipline matter, apparently involving J.S.R.'s iPod mp3 player. The iPod was taken from J.S.R. and delivered to Groves. J.S.R.'s mother was summoned to school and she and Groves reviewed the paperwork necessary to effect the suspension of J.S.R. Groves returned the iPod to J.S.R.'s mother but she asked him to keep the device. He agreed, and placed it in a drawer.

J.S.R. was then brought to Groves' office and the suspension paperwork was signed. Groves agreed that J.S.R. seemed "fine" with the suspension. But when his mother told J.S.R. the school would keep his iPod, he shoved his chair, stood up, and declared, "that's f'd up." Groves responded that such language was not allowed in his office. J.S.R. replied he was not "f-ing scared" of Groves. According to Groves, the language of J.S.R. grew worse. Groves summoned a school police officer. J.S.R. removed his coat, threw it on the floor and moved toward Groves at his desk. The officer entered the office and stepped between Groves and J.S.R. J.S.R. then told Groves he would catch him "on the street somewhere and f'k [him] up." The officer then

removed J.S.R. to another office. Groves testified that he believed J.S.R.'s statement was a threat and had the officer not intervened J.S.R. would have assaulted him.

On cross-examination, Groves agreed that the threat and aggressive movements by J.S.R. did not occur until J.S.R. learned his iPod would not be returned. But according to Groves, J.S.R. threatened him because he brought a police officer into the office for the purpose of filing a charge against J.S.R. for inappropriate language.

J.S.R. called a probation officer as his only witness. During his brief testimony, the officer read the following from a letter he submitted to the prosecutor. "During this suspension, the child made a threat toward Assistant Principal Rob Groves insinuating retaliation for suspension." Neither side asked additional questions of the officer.

At the conclusion of the hearing the court verbally rendered judgment that the allegations of the State's petition were true. The written judgment contained a finding tracking the allegation of the State's petition and decreed that J.S.R had engaged in delinquent conduct. J.S.R. does not challenge the disposition order committing him to an indeterminate period in the custody of TYC. This appeal followed.

Analysis

Through two issues, J.S.R. asserts the evidence was insufficient to support the trial court's adjudication of delinquency and a material variance exists between the allegations of the State's petition and its proof at trial. We begin with the challenge to the sufficiency of the evidence.

3

Delinquent conduct is conduct other than a traffic offense that violates a penal law of Texas or of the United States and that is punishable by imprisonment or confinement in jail. Tex. Fam. Code Ann. § 51.03(a)(1) (West Supp. 2011). Proceedings in juvenile court are quasi-criminal in nature but classified as civil cases. *In re Hall,* 286 S.W.3d 925, 927 (Tex. 2009) (orig. proceeding). In general, juvenile proceedings are governed by the rules of civil procedure and the Family Code. Tex. Fam. Code Ann. § 51.17 (West Supp. 2011); *In re R.J.H.,* 79 S.W.3d 1, 6 (Tex. 2002). A juvenile is entitled to the essentials of due process because the case disposition may result in deprivation of the juvenile's liberty. *In re T.L.K.,* 316 S.W.3d 701, 702 (Tex.App.--Fort Worth 2010, no pet.) (citing *In re J.R.R.,* 696 S.W.2d 382, 383 (Tex. 1985) (per curiam)).

Petition requirements in a juvenile proceeding are governed by the Family Code. *L.G.R. v. State,* 724 S.W.2d 775, 776 (Tex. 1987). A petition for adjudication "must state: with reasonable particularity the time, place and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts." Tex. Family Code Ann. § 53.04(d)(1) (West 2008). Due process requires that the petition be sufficient to inform the juvenile of the specific issues he must meet. *In re Gault,* 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967).

When reviewing the sufficiency of the evidence in an adjudication hearing we apply the criminal law standard because the State bears the same burden of proof as in a criminal case. *In re E.P.,* 963 S.W.2d 191, 193 (Tex.App.--Austin 1998, no writ); Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2011). Under that standard we view all of the

4

evidence in the light most favorable to the court's judgment to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893 (Tex.Crim.App. 2010) (plurality op.). *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). The essential elements of the crime are those defined by the hypothetically correct jury charge. *Geick v. State,* No. PD-1734-10, 2011 Tex. Crim. App. Lexis 1342, at *6 (Tex.Crim.App. Oct. 5, 2011) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). We thus measure the sufficiency of the evidence by the essential elements as defined by the hypothetically correct charge. *Cada v. State,* 334 S.W.3d 766, 773 (Tex.Crim.App. 2011). This standard applies to all trials whether by jury or to the bench. *Malik,* 953 S.W.3d at 240; *Campbell v. State,* 139 S.W.3d 676, 683 (Tex.App.--Amarillo 2003, pet. refused). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik,* 953 S.W.2d at 240.[2] "[B]efore something may be an element of the offense in the hypothetically correct jury charge, it must be 'authorized by the indictment.' For example, if the penal offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually alleged in the indictment." *Cada,* 334 S.W.3d at 773 (footnotes omitted).

---

[2] This list of characteristics "is not necessarily exhaustive." *Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).

"When an indictment facially alleges a complete offense, the State is bound by the theory alleged in the indictment, as is the reviewing court in its sufficiency analysis." *Rojas v. State,* 986 S.W.2d 241, 246 (Tex.Crim.App. 1998) (citing *Montoya v. State,* 906 S.W.2d 528, 529 (Tex.Crim.App. 1995)).

The Court of Criminal Appeals has described Penal Code § 36.06, "Obstruction or Retaliation" as "a good example of the 'Chinese Menu' style of alleging the elements of a penal offense." *Cada,* 334 S.W.3d at 770; *see Geick*, 2011 Tex. Crim. App. Lexis 1342, at *10-12 (discussing *Cada*). Several of the elements present alternatives for charging the offense. *Cada,* 332 S.W.3d at 770. The elements and alternatives of the offense are:

(1) The Defendant

(2) a. intentionally [or]

    b. knowingly

(3) a. harms [or]

    b. threatens to harm

(4) another person

(5) by an unlawful act

(6) a. in retaliation for [or]

    b. on account of

(7) a. the service of another [or]

    b. the status of another

(8) as a

    a. public servant

b. witness

c. prospective witness [or]

d. informant.

*Id.* The State's charging instrument must allege at least one item from each numbered elemental category. *Id.*

Elements presenting an option may be plead in the conjunctive and it is sufficient if the proof at trial establishes any one of the alleged alternative elements beyond a reasonable doubt. *Id.* at 770-71. We measure the sufficiency of the evidence by the specific alternative elements alleged by the State in the charging instrument. *Id.* at 773-74. "Thus, if the State pleads one specific element from a penal offense that contains alternatives for that element, the sufficiency of the evidence is measured by the element that was actually pleaded, not any other statutory alternative element." *Id.* at 774 (citing *Planter v. State,* 9 S.W.3d 156, 159 (Tex.Crim.App. 1999) (holding that the State was restricted to proof of the one statutory theory of solicitation of capital murder that it had alleged; evidence insufficient to prove that theory, even though it was sufficient to prove the unplead statutory alternative)). Due process requires the State to prove each element of the offense alleged beyond a reasonable doubt. *Id.* at 774, 776.[3]

Significant here, "[t]he 'service' or 'status' of the complainant as a 'public servant,' . . . are all differing elements of the underlying offense." *Cada,* 334 S.W.3d at 770. "Status" refers to a person's position or rank in relation to others." Merriam-Webster's

---

[3] "Under *Jackson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory elements that it did not allege." *Cada*, 334 S.W.3d at 776.

Collegiate Dictionary 1220 (11th ed.).[4] "Service" refers to the "occupation or function of serving." *Id.* at 1137. Parenthetically, J.S.R. does not dispute that Groves was a public servant.[5] The State was free to allege alternatively that J.S.R. threatened Groves in retaliation for his status or his service as an associate principal. Yet the State limited its proof options at the adjudication hearing by alleging only that J.S.R. acted in retaliation for Groves' status. *See Cada,* 334 S.W.3d at 773-74 (noting sufficiency of evidence is measured by specific alternative elements alleged in indictment). The record shows Groves suspended J.S.R. from school as part of Groves' service as associate principal. During the suspension procedure, he threatened to harm Groves by an unlawful act, because Groves kept his iPod or because Groves summoned school police. But no evidence shows the threatened retaliation was because of Groves' status as associate principal. Rather, the retaliatory threat was for Groves' service as associate principal.[6] Because the State did not present any evidence that the threatened retaliatory conduct was on account of Groves' status as associate principal, it did not prove each element of the charged offense beyond a reasonable doubt. We sustain J.S.R.'s first issue.

---

[4] The Penal Code does not define the terms service or status. "Where statutory terms are not defined by the legislature, we ascribe to those terms their ordinary meaning." *Morrow v. State,* 862 S.W.2d 612, 614 (Tex.Crim.App. 1993).

[5] "Public Servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties: (A) an officer, employee, or agent of government. Tex. Penal Code Ann. § 1.07(41)(A) (West Supp. 2011).

[6] As the State describes it in its brief, "J.S.R. threatened Groves for his role in exercising his administrative duties."

Having found the evidence adduced at the adjudication hearing was legally insufficient to support judgment for the offense alleged in the State's petition, our consideration of J.S.R.'s second issue is unnecessary.[7] Tex. R. App. P. 47.1.

## Conclusion

We reverse the judgment of the trial court and render a judgment of acquittal. The trial court's disposition order, which is predicated on the adjudication of delinquency, is vacated.

James T. Campbell
Justice

---

[7] Although we do not reach J.S.R.'s second issue asserting the existence of a material variance, we note that the evidentiary insufficiency we find in this case is addressed in the Court of Criminal Appeals' jurisprudence regarding variances. As Presiding Judge Keller noted in her concurring opinion in *Fuller v. State,* a variance involving the State's failure to prove a statutorily-enumerated element plead in the indictment is "always material. The State cannot 'substantially' prove a statutorily-enumerated element of the offense; the element is proven or it is not proven. So while one could call that situation a 'variance,' it is not the type of variance that calls for a materiality determination." *Fuller v. State,* 73 S.W.3d 250, 256 (Tex.Crim.App. 2002) (Keller, P.J., concurring); *see Cada,* 334 S.W.3d at 774 and 774 n.36.