**Opinion filed September 17, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00092-CR

_____

## GARY TRENT RINGO SR., Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR39444**

## MEMORANDUM OPINION

The jury convicted Gary Trent Ringo Sr. of the offense of retaliation.  The trial court assessed his punishment at confinement for ten years with no fine.  The trial court suspended the sentence and placed him on community supervision for five years.  Appellant appealed and argued that the evidence was insufficient to convict him of the offense of retaliation.  We affirm.

### I. *The Charged Offense*

The grand jury indicted Appellant for retaliation.[1]  The indictment alleged that Appellant intentionally and knowingly threatened to harm Jim Olson by

---

[1]TEX. PENAL CODE ANN. § 36.06(a)(1)(A) (West 2011).

assault in retaliation for and on account of the status and the service of Michelle Olson as a person who had reported the occurrence of a crime and who was a prospective witness. A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for the service or status of another as a public servant, witness, prospective witness, or informant. PENAL § 36.06(a)(1)(A); *see Cada v. State*, 334 S.W.3d 766, 770 (Tex. Crim. App. 2011); *Davis v. State*, 890 S.W.2d 489, 491 (Tex. App.—Eastland 1994, no pet.). This offense is a third-degree felony and may be punished by confinement for not less than two years or more than ten years, and a fine of up to $10,000 may be assessed. PENAL § 12.34. Appellant pleaded not guilty and proceeded to trial.

## II. *Evidence at Trial*

Michelle Olson, a retired teacher, is the owner of Sunflower Antiques in Midland, Texas. The antique business was located in two rental spaces in a single strip mall located in the 3400 block of Thomason Drive. A barbershop, Talking Headz, was located in the same strip mall adjacent to one of the antique shops. Between the barbershop and the other antique shop was a vacant store, 3414 Thomason Drive. Michelle said that the relationship between her and her husband and Appellant started off well when Appellant opened his barbershop, but things eventually deteriorated.

Michelle was at her antique shops one December evening when she noticed a man asleep outside the vacant store. Michelle testified that the man leaned his head on the concrete planter located in front of the vacant store. The man was oddly positioned. Later, as she traveled back and forth between her two shops, she saw the same man on the ground, unconscious and facedown, in front of the vacant store. Michelle thought the man was highly intoxicated because he was

unconscious and oddly positioned and had a bottle in a paper bag next to him. Michelle called the police.

When the police arrived, the man was in the barbershop. The officers were in the barbershop for several minutes and then left. After the police left, Michelle closed her two shop spaces. As she exited one shop, Appellant and several other men came out onto the sidewalk. Appellant and the men stood in the shadows, yelled, and acted aggressively toward Michelle; Michelle testified that the situation "[s]cared [her] to death." The men were angry that she had called the police. Appellant yelled that the Olsons were "[m]essing with [his] F'ing customers" and "always calling the police." Michelle got into her Jeep and locked the doors, while her husband went inside one of the shops to set the alarm.

Jesus P. Robledo III is a police officer with the Midland Police Department. Officer Robledo and Djuan Goswick, who was a probationary peace officer with the Midland Police Department at the time, both responded to a call at the barbershop. Both spoke to Michelle about the person she saw on the ground near the barbershop. Officer Robledo and Officer Goswick both went into the barbershop. Inside, they found the male Michelle had described; his last name was Wallace, and he had a bag with a bottle of alcohol in it. Once both officers were inside the barbershop, Appellant became upset and argued that the police should question and arrest the person who complained about Wallace, his patron, rather than question Wallace in Appellant's barbershop.

Officer Goswick located Wallace inside the barbershop and spoke to him; Wallace was cooperative. While Officer Goswick spoke to Wallace, Officer Robledo spoke to Appellant. Officer Goswick recalled that Wallace had a small bottle of vodka in a brown paper bag. Officer Robledo testified that Appellant said he would take care of Wallace; Officer Robledo commented that Appellant was not very cooperative. Officer Robledo also did not find any

3

information that led him to believe that Appellant or his patrons were being harassed that evening. Afterward, the officers left the barbershop.

James "Jim" Olson is married to Michelle and is a co-owner of Sunflower Antiques. He retired from the military as a major who worked in intelligence, and he also is a retired high school government and history teacher. Jim also serves as a reserve deputy sheriff. Jim remembered one evening that Michelle had come into the antique shop and was shaken after she had been harassed when she walked past the barbershop. Jim escorted her to her Jeep and then went to the other shop to set the alarm. When Jim walked to the shop to set the alarm, he turned on his cell phone and recorded Appellant and the other men taunting Michelle; they also threatened Jim. Jim heard Appellant, and others, make catcalls and threats against Michelle. Appellant also said to Jim, "Don't f--k with my customers." Jim recorded the exchange on his cell phone. Jim walked away from the sidewalk to avoid an altercation with Appellant, but Appellant said to him, "Don't ever walk on my sidewalk." Appellant, who was very angry, also threatened to beat Jim with a big stick. Two other men were with Appellant, who was about six feet tall and weighed approximately 250 pounds, when Appellant made the threats against Jim and Michelle. Jim had his service weapon with him and had his badge on that early evening, but he testified that he never threatened anyone.

James Cox, who is a police officer with the Midland Police Department, testified that he was dispatched to the 3400 block of Thomason Drive to investigate a possible retaliation in reference to complaints made earlier in the evening about an intoxicated person who had loitered in public. Officer Cox arrived and spoke to Michelle and Jim, who were inside the shop. Both Jim and Michelle recounted what had happened that evening. Officer Cox testified that Michelle looked scared and did not want to go outside and that Jim was upset and angry. Officer Cox reviewed the audio recording that Jim had made on his phone and the video from

4

security cameras. Officer Cox went inside the barbershop, where four individuals were seated, and spoke to Appellant. Officer Cox was concerned for his safety in the barbershop because the individuals inside were uncooperative and did not want him in the barbershop. After backup arrived, Officer Cox arrested Appellant.

Appellant, after he was advised of his right to remain silent and not testify at trial, decided to testify. Appellant testified that he had previously lived in Harvey, Illinois, before he moved to Midland and opened the barbershop. Appellant explained that there were problems with the limited number of parking spaces at the strip mall. His customers were confronted by Michelle or Jim if the customers parked in the parking spots reserved for Sunflower Antiques. This issue was an ongoing problem. Appellant said that, one day, the police came into his barbershop and questioned a man about his drinking outside the barbershop; Appellant said he let people drink while they waited for a haircut. Appellant said people do not loiter at his barbershop, but they do go outside to smoke.

Appellant denied that he ever harassed Michelle or threatened her. Appellant admitted he exchanged words with Jim; Appellant admitted that it was his voice on the audio recording. Appellant also admitted that Jim wore his sheriff's jacket and had a gun and that Jim oftentimes wore his badge. On that evening, Appellant had words with Jim. Appellant admitted that, as Jim walked closer to him, Appellant said to Jim that, if Jim came any closer to him, Appellant would take his gun and beat Jim with it. Appellant admitted he should not have said those things to Jim. On cross-examination, Appellant admitted that he said to Jim, "If you call the cops again you're gonna have a problem, that's a threat." He also admitted that he was angry and that he said, "Don't come down here."

Estella Miller is one of several barbers that worked for Appellant at his barbershop on Thomason Drive. She also currently works for Appellant at his new barbershop. Appellant is her direct supervisor. Miller was working on the day of

the incident between Appellant and the Olsons.  Miller denied that Appellant, or any of the other barbers, taunted or threatened Jim.  She could not say if the customers had said anything.  She testified that she saw the incident outside the barbershop that evening between Appellant and Jim.  She could not hear everything that was said, but remarked both men were angry.  Miller testified that she did not want Appellant to get into trouble.

## III. *Standard of Review*

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd).  Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We defer to the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## IV. *Discussion and Analysis*

Appellant argues that the evidence is insufficient to convict him of retaliation.  A central purpose of the retaliation statute is to encourage a specified class of citizens—which includes public servants, witnesses, prospective witnesses, and informants—to perform vital public duties without fear of retribution.  *Cada*, 334 S.W.3d at 771.  "Those public duties may include reporting criminal activities,

testifying in official proceedings, or cooperating with the government in a criminal investigation." *Id.* (quoting *Morrow v. State*, 862 S.W.2d 612, 615 (Tex. Crim. App. 1993)) (internal quotation marks omitted).

A person commits the felony offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for the service or status of another as a public servant, witness, prospective witness, or informant. PENAL § 36.06(a)(1)(A). The "service" or "status" of the complainant as a "public servant," "witness," "prospective witness," or "informant" are all differing elements of the underlying offense. *Cada*, 334 S.W.3d at 770. The retaliation statute is a good example of the "Chinese Menu" style of setting out the elements of a penal offense. *Id.*; *see Geick v. State*, 349 S.W.3d 542, 546 (Tex. Crim. App. 2011) (discussion of *Cada*); *In re J.S.R.*, 419 S.W.3d 429, 433 (Tex. App.—Amarillo 2011, no pet.) (discussion of elements of PENAL § 36.06). Section 36.06(a)(1)(A) of the retaliation statute contains eight different elements, but several of those elements include distinct alternatives, which may or may not be included in a particular indictment and jury charge. *Cada*, 334 S.W.3d at 770. Those applicable elements in this case are the following: (1) the defendant; (2) intentionally or knowingly; (3) threatens to harm; (4) another person; (5) by an unlawful act; (6) in retaliation for or on account of; (7) the service of another or the status of another; (8) as a prospective witness. *See id.*; *Davis*, 890 S.W.2d at 491.

Michelle testified that she called the police because Wallace appeared to be intoxicated and unconscious. She explained how, after the police came and left the first time, Appellant harassed her and scared her. Jim testified about how he recorded the interaction he had with Appellant. Jim recalled how Appellant had said he would beat up Jim. Appellant had complained to the police that they should arrest the Olsons and not Wallace or any of his other customers. Appellant was angry that the Olsons had called the police. Appellant admitted that he had

said he would take Jim's gun and beat him with it. Appellant conceded that he should not have said the things that he said to Jim.

We have reviewed the record, and we hold that a rational jury could have found beyond a reasonable doubt all of the elements of the offense of retaliation as charged in this case and that the evidence is sufficient to support Appellant's conviction for the offense of retaliation. We overrule Appellant's sole issue on appeal.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


September 17, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.