

# NUMBER 13-17-00596-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAMON JOEL PENA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Perkes
### Memorandum Opinion by Justice Hinojosa

By one issue, Appellant Ramon Joel Pena asserts that there was insufficient evidence to support the jury's verdict of guilt for continuous violence against the family, a third-degree felony. *See* Tex. Penal Code Ann. § 25.11. We affirm.

## I. BACKGROUND

Pena was charged on a two-count indictment for kidnapping and continuous

violence against the family, both third-degree felonies. *See id*. §§ 20.03, 25.11. During trial, the State elicited evidence regarding three episodes of violence between Pena and his alleged victim, his live-in girlfriend Tory Ashley Martinez. These incidents occurred on September 23, 2016, September 26, 2016, and January 16, 2017.

## A.    First Alleged Incident: September 23, 2016

Martinez testified that Pena woke her up on the night of September 23, 2016, to ask her about a Facebook message she had received from another male. She explained that "he was upset" because they "were in a relationship so he wanted to know why another man was messaging [her]." Martinez claimed that Pena wanted to leave the apartment they shared but she wanted him to stay to talk about the matter. She testified that she was "standing in front of the door trying to hold him to stay." According to Martinez, Pena "pushed" her out of the way "with his body weight", causing her to hit an end table in the kitchen. She clarified that he did not physically push her to the ground. In her words, "he was moving [her] out of the way." When asked if Pena assaulted her that day, she responded, "I mean, if that's how it's labeled." The couple's upstairs neighbors called the police because their argument was so loud.

Officer Santos Garcia, a patrol officer with the Corpus Christi Police Department, responded to the domestic disturbance call. When he arrived, he found Martinez "upset" and "kind of scared." Martinez informed Officer Garcia that she fell on her tailbone, causing her pain, and that she had a scratch on the back of her leg. The trial court admitted two photos documenting these injuries. Officer Garcia testified that he

did not speak to Pena because Pena had left the premises. Martinez did not want to press charges. She defended Pena, stating, "I don't think he knew that it happened when he did it because he was just trying to leave . . . ."

## B. Second Alleged Incident: September 26, 2016

Martinez testified that Pena moved out of their apartment after the September 23rd argument. Three days later, on September 26, 2016, she was returning some belongings to him at his mother's home. While delivering the items, Pena asked Martinez for her phone and discovered more messages from a different man. Pena allegedly became upset because the couple had only been separated for a weekend. Martinez said she got out of her car to retrieve her phone from Pena and they began to fight. She testified, "I hit him like in the face trying to grab [the phone] from him and from there we physically had an altercation." According to Martinez, Pena hit her, knocked her down, and kicked her on her side so hard she got the air "knocked out of her." She said that Pena grabbed her by the back of her shirt and her hair to get her inside his house. Once they were inside, she claims that Pena began to cry. He allegedly apologized and told her he did not mean to hurt her.[1]

Martinez's ex-boyfriend, Michael Martinez, testified about the September 26, 2016 incident. Michael shared that he and Martinez were in a romantic relationship for about

---

[1] Martinez then testified about facts related to Pena's kidnapping charge. The State claimed that, after the fight over the phone, Pena and Martinez left in his vehicle and Pena allegedly would not let Martinez leave his vehicle. Because that conviction is not the subject of this appeal, we need not summarize that testimony here. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

3

ten years and have two children together. Michael stated that he was asleep that evening when he woke up to someone banging on his door. When he opened the door, he found Martinez crying on his porch with a busted lip. Martinez told him that her side was hurting. He noticed "red on her back" and testified that she "had some scratches here and there." Martinez asked Michael to call 9-1-1. Later, Michael received a call from Pena. Pena allegedly told Michael that he "f-cked up." Pena told Michael that he "got angry" and "put his hands on [Martinez]".

Officer Justin Wicks, a fourteen-year veteran with the Corpus Christi Police Department, testified that he responded to the 9-1-1 call. When he arrived, Martinez "seemed distressed, upset, [and] scared" and was crying. Officer Wicks noticed that her face looked swollen and that she had some markings on her arms. Corpus Christi firefighter and paramedic Joshua Brunomeyer also responded to the 9-1-1 call that evening. Firefighter Brunomeyer reported that Martinez stated she was "pulled by her hair prior to the incident, that she was kicked on her sides, and that—that pretty much she was assaulted by a male." He confirmed that her injuries matched her statement. Martinez was taken to the hospital because she was having difficulty breathing and was "in a lot of pain." She had a "road rash" on her back from being dragged inside Pena's mother's home.

## C. Third Alleged Incident: January 16, 2017

Martinez testified that the couple got into another fight on January 16, 2017. Officer Tonya Box, a three-year officer with the Corpus Christi Police Department,

4

responded to this 9-1-1 call. When she saw Martinez, she testified that Martinez started crying, was shaking, and "had a terrified look on her face." The officer said that Martinez looked her in the eyes and mouthed "help me." The officer asked her about her injuries and she reported that her boyfriend, Pena, backhanded her causing a busted lip and also caused some bruising on her arms when he grabbed her. Officer Box arrested Pena and placed him in her patrol vehicle. On the way to the police station, Officer Box heard Pena say that his life was over and that there was no point living anymore because he was going back to jail.

Following this arrest, Martinez admitted that she paid for his defense attorney and sent letters, money, and books to him while he was in jail. She said she loved Pena. Detective Robin Cassel, a twenty-nine-year law enforcement officer now working in the Corpus Christi Police Department Family Violence Unit, also testified. He stated that during his investigation of these alleged assaults, Martinez recanted some of her prior allegations. He commented that it is common for victims to change their stories.

**D.    Trial Conclusion**

The jury found Pena guilty of unlawful restraint (a lesser-included offense of kidnapping) and continuous violence against the family. *See* TEX. PENAL CODE ANN. §§ 20.02, 25.11. The jury sentenced Pena to one year in county jail for the unlawful restraint misdemeanor and eight years' imprisonment in the Texas Department of Criminal Justice-Institutional Division for the continuous violence against family felony. Pena appeals the latter conviction, challenging the legal sufficiency of the evidence to

5

support it.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, (1979)). We consider all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We also consider direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Under this review, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). To be entitled to a reversal of conviction on an insufficiency of the evidence claim, appellant must show that no rational jury could have found all of elements of the offense beyond a reasonable doubt. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773

6

(Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)).   Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried.   *Id.*

A person commits continuous violence against the family if, during a period that is twelve months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 22.01(a)(1) against another person or persons whose relationship to or association with the defendant is described by §§ 71.0021(b), 71.003, or 71.005 of the Texas Family Code.   *See* TEX. PENAL CODE ANN. § 25.11; *see also id*. § 22.01(a) (holding that a person commits assault if they intentionally, knowingly, or recklessly cause bodily injury to another); TEX. FAMILY CODE ANN. § 71.0021(b) (defining a "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature.").   Here, it is undisputed that Martinez and Pena were in a "dating relationship."   *Id*. § 71.0021(b).

### III. ANALYSIS

In his brief, Pena concedes that he committed the assault which occurred on January 16, 2017.   Pena acknowledges that he "backhanded" Martinez, causing her a busted lip and pain.   He argues, however, that there was insufficient evidence to prove that either of the other two incidents in September 2016 occurred as alleged by the State.

We analyze each incident in turn.

**A.      September 23, 2016**

Martinez testified that Pena wanted to leave the apartment they shared after an argument about some Facebook messages she received from another man.   Martinez claimed that, while trying to get Pena to stay to discuss the matter, she stood in front of the apartment door.   According to her, Pena "pushed" her out of the way "with his body weight," causing her to hit an end table in the kitchen.   The couple's upstairs neighbors called the police because the couple was arguing so loudly.   When Corpus Christi Police Officer Garcia responded to the disturbance call, he found Martinez "upset" and "kind of scared."   Pena had left the scene.   Martinez informed Officer Garcia that she fell on her tailbone and that she had a scratch on the back of her leg.   The trial court admitted two photos documenting these injuries.

In light of the foregoing testimony and evidence, we conclude the evidence was sufficient to show that Pena intentionally, knowingly, or at least recklessly caused Martinez bodily injury on September 23, 2016.   *See* TEX. PENAL CODE ANN. § 22.01(a)(1); *see also id*. § 6.03(c) ("a person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur").

**B.      September 26, 2016**

Regarding this incident, Martinez testified that she and Pena got into another

argument when he saw more Facebook messages from a different man on her phone. When trying to retrieve her phone, Martinez admitted that she initiated the physical altercation when she hit Pena in the face trying to grab her phone. Then, she reported that Pena hit her, knocked her down, and kicked her on her side so hard she got the wind "knocked out of her." She stated that Pena then grabbed her by the back of her shirt and her hair and dragged her into his house, causing a "road rash" on her back. When she went to her ex-boyfriend Michael's house later that evening, Michael found her crying on his porch with a busted lip. Officer Justin Wicks noticed that Martinez's face was swollen and that she had some markings on her arms. And Firefighter Brunomeyer recalled that Martinez stated she was "pulled by her hair prior to the incident, that she was kicked on her sides, and that—that pretty much she was assaulted by a male." He confirmed that her injuries matched with her statement. Martinez sought medical treatment that evening because she was having difficulty breathing and was in pain. Michael also testified that Pena called him on the phone and admitted that he "f-cked up" and "put his hands on [Martinez]".

Although Pena urges us to consider that Martinez allegedly instigated this fight when she hit his face, viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that Pena caused bodily injury to Martinez on September 26, 2016. *See id.* § 22.01(a)(1). We also hold that a rational factfinder could have determined that Pena, during a period of 12 months or less, two or more times intentionally, knowingly, or recklessly caused bodily

9

injury to Martinez, a person with whom he had a dating relationship. *See Gear*, 340 S.W.3d at 746; *Jackson*, 443 U.S. at 318–19. The jury could have believed that either or both of September of 2016 incidents occurred. Those incidents, combined with the assault Martinez admits to on January 16, 2017, are sufficient to uphold Pena's conviction.

## IV. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of September, 2019.