PD-0372-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/20/2015 12:00:00 AM
Accepted 4/21/2015 2:26:37 PM
ABEL ACOSTA
CLERK

NO. PD-0372-15

IN THE

# COURT OF CRIMINAL APPEALS

OF TEXAS
AUSTIN, TEXAS

# LUIS SANCHEZ
PETITIONER,

V.

# STATE OF TEXAS
RESPONDENT

# *PETITION FOR DISCRETIONARY REVIEW*

ON PETITION FOR DISCRETIONARY REVIEW from the
ELEVENTH COURT OF APPEALS , EASTLAND, TEXAS
CASE NO.  11-12-00279-CR

On appeal from the 161ST Judicial District of Ector County, Texas
Cause Number B-37,135
Honorable John W. Smith, Presiding

M. Michele Greene
State Bar No.00789966
2833 Wildwood Ave.
Odessa, Texas 79761
Tel: (432) 238-1255
Email: mmg@michelegreenelaw.com

**Attorney for Petitioner**

FILED IN
COURT OF CRIMINAL APPEALS

April 21, 2015

ABEL ACOSTA, CLERK

*PETITIONER REQUESTS ORAL ARGUMENT*

NO. PD-0372-15

IN THE

# COURT OF CRIMINAL APPEALS

OF TEXAS
AUSTIN, TEXAS

# LUIS SANCHEZ
PETITIONER,

V.

# STATE OF TEXAS
RESPONDENT

# *PETITION FOR DISCRETIONARY REVIEW*

ON PETITION FOR DISCRETIONARY REVIEW from the
ELEVENTH COURT OF APPEALS , EASTLAND, TEXAS
CASE NO.  11-12-00279-CR

On appeal from the 161ST Judicial District of Ector County, Texas
Cause Number B-37,135
Honorable John W. Smith, Presiding

**TO THE HONORABLE JUSTICES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:**

NOW COMES Luis Sanchez, Petitioner in this cause, by and through his court-

appointed appellate counsel, M. Michele Greene, and, pursuant to the provisions of

**TEX. R. APP. P. 67** *et seq.*, moves this Court to grant this petition for discretionary

review, and in support will show as follows:

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names, addresses, and emails (if known), of all counsel.

**Defendant/Appellant/Petitioner:**      Luis Sanchez

**Complainant/Appellee/Respondent:**      State of Texas

**Petitioner's Counsel:**
**at Trial:**      William R. Bowden, Jr.
221 W. 4th Street
Odessa, Texas 79761

**Petitioner's Counsel**
**on Appeal:**      M. Michele Greene
2833 Wildwood Ave.
Odessa, Texas 79761
mmg@michelegreenelaw.com

**Respondent's Counsel**
**at Trial:**[1]      Dusty Gallivan
Deputy District Attorney
300 N. Grant Ave., Rm. 305
Odessa, Texas 79761

**Respondent's Counsel**
**on Appeal:**      Michael Bloch
Assistant District Attorney
300 N. Grant Ave. Rm. 305
Odessa, Texas 79761
MICHAEL.BLOCH@ectorcountytx.gov.

---

[1]The Reporter's Record reflects that a "Mr. Conner" was asking questions and making objections on behalf of the State during the bench trial; however, this individual is not otherwise specifically identified in any volume of the Reporter's Record. (RR 4:79-83,91).

**Trial Court:** The Honorable John W. Smith, 161ST District Court, Ector County, Texas

**Appellate Court:** Justices Jim R. Wright, Mike Wilson, and John M. Bailey, Court of Appeals, Eleventh District of Texas.

# RECORD REFERENCES

The Clerk's Record contains only one volume; therefore, references in this petition to the Clerk's Record are by volume and page number, indicated as "CR 1:__." The Clerk's Record contains the pleadings, orders, and correspondence filed with (or sent to) the trial court and clerk that are pertinent to this appeal.

This appeal also includes two Supplemental Clerk's Records. Each Supplemental Clerk's Record contains only one volume. References to the Supplemental Clerk's Record dated December 11, 2012, in this petition are by volume and page number, indicated as "SCR 1:__." References to the Supplemental Clerk's Record dated August 19, 2013, in this petition are also by volume and page number, indicated as "2SCR 1:__."

The Reporter's Record contains six volumes; therefore, references to the Reporter's Record in this petition are by volume and page number, indicated as "RR __:__." The Reporter's Record includes the transcripts of the arraignment hearing held on April 5, 2010,[2] and the pretrial hearing held on June 8, 2011. The Reporter's Record also includes transcripts of the bench trial held on September 6, 2012, and the post-judgment hearing held on October 2, 2012.

---

[2]Volume 2 of the Reporter's Record reflects that the arraignment hearing in this cause was held on September 6, 2012; however, this date reflects a typographical error, as the arraignment hearing was actually held on April 5, 2010. (SCR 1:15).

References to the Eleventh Court of Appeals' majority opinion issued March 5, 2015 are by page number, indicated as "AO, __."

References to Chief Justice Jim R. Wright's Dissenting and Concurring Opinion also issued on March 5, 2015 are by page number, indicated as "DAO, __."

## PARTY REFERENCES

Petitioner Luis Sanchez shall be referred to as "Petitioner." Respondent the State of Texas shall be referred to as "Respondent." The Eleventh Court of Appeals shall be referred to as "the Appellate Court."

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

RECORD REFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PARTY REFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . ix

GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION AND PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A -    Majority Opinion:

        *Sanchez v. State*, No. 11-02-00279-CR, 2015 TEX. APP. LEXIS 2113 (Tex. App.–Eastland, delivered March 5, 2015)

    B-    Dissenting and Concurring Opinion:

        *Sanchez v. State*, No. 11-02-00279-CR, 2015 TEX. APP. LEXIS 2113 (Tex. App.–Eastland, delivered March 5, 2015)

# INDEX OF AUTHORITIES

**CASES**
*Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . 2

*Hill v. State*, No. 01-10-00926-CR; 2012 TEX. APP. LEXIS 2225
     (Tex. App.–Houston [1ˢᵗ Dist.], March 22, 2012, no pet.)
     (mem. op.) (not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sanchez v. State*, No. 11-02-00279-CR, 2015 TEX. APP. LEXIS 2113
     (Tex. App.–Eastland, delivered March 5, 2015) . . . . . . . . . . . . . . . . . . ix-x

*White v. State,* No. 05-09-00112-CR; 2010 TEX. APP. LEXIS 5985
     (Tex. App. Dallas, July 29, 2010, pet. ref'd) (mem. op.)
     (not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**RULES**
TEX. R. APP. P. 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

**STATUTES**
TEX. FAM. CODE ANN. § 71.0021(b) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . ix,1-2

TEX. FAM. CODE ANN. §§ 71.0021(b)(1-3) (LEXIS 2015) . . . . . . . . . . . . . . . . . 2-3

TEX. FAM. CODE ANN. § 71.003 (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 1,3

TEX. FAM. CODE ANN. § 71.005 (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. GOV'T CODE ANN. § 573.024(a)(1) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . 3

TEX. PEN. CODE §§ 22.01(a)(1) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . ix,1

TEX. PEN. CODE ANN. § 22.01(b)(2) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . 1-2

TEX. PEN. CODE ANN. § 22.01(b)(2)(B) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . ix,1

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner has raised an important question of first impression in this Court and believes that oral argument would help clarify the issue presented in this Petition for Discretionary Review. Therefore, Petitioner respectfully requests oral argument pursuant to TEX. R. APP. P. 39.

## STATEMENT OF THE CASE

Petitioner was charged with assault family violence solely under TEX. PEN. CODE ANN. §§ 22.01(a)(1), (b)(2)(B) and TEX. FAM. CODE § 71.0021(b). The State failed to alternatively charge Petitioner under TEX. FAM. CODE §§ 71.003 or 71.005. The evidence at trial conclusively established Petitioner was married to the victim at the time the alleged assault occurred. Accordingly, there was a fatal variance between the indictment and the proof at trial. The majority of the Appellate Court therefore erred in affirming Petitioner's third-degree felony conviction for assault family violence under TEX. PEN. CODE ANN. § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

# STATEMENT OF PROCEDURAL HISTORY

On or about March 22, 2010, Petitioner was indicted on one count of assault family violence, a third degree felony pursuant to TEX. PEN. CODE ANN. §§ 22.01(a)(1), (b)(2)(B) (LEXIS 2015) and TEX. FAM. CODE ANN. § 71.0021(b) (LEXIS 2015). (CR 1:5).

On September 6, 2012, the Honorable John W. Smith of the 161st Judicial District Court of Ector County, Texas held a bench trial in this cause. (RR 4:1). At the conclusion of the bench trial, the trial court found Petitioner guilty of the indicted charge, and on September 18, 2012, the trial court entered a Judgement of Conviction by Court–Waiver of Jury Trial sentencing Petitioner to six years in the Institutional Division of the Texas Department of Criminal Justice pursuant to TEX. PEN. CODE ANN. § 12.14 (LEXIS 2015). (CR 1:57-58; RR 4:138; 5:10).

On September 25, 2012, Petitioner timely filed his Notice of Appeal. (CR 1:59). Petitioner presented one issue in his appellate brief asserting the State failed to prove all the statutory elements required under TEX. PEN. CODE §§ 22.01(a)(1), (b)(2) and TEX. FAM. CODE § 71.0021(b).

On March 5, 2015, a majority of the Appellate Court affirmed Petitioner's conviction under TEX. PEN. CODE §§ 22.01(a)(1), (b)(2)(B) and TEX. FAM. CODE § 71.0021(b). (AO, 10). *Sanchez v. State*, No. 11-02-00279-CR, 2015 TEX. APP. LEXIS

2113 (Tex. App.–Eastland, delivered March 5, 2015). The Honorable Justices Mike Wilson and John M. Bailey participated in the majority decision of the Appellate Court, with Justice John M. Bailey authoring the majority opinion of the court. (*Id.*).

On that same day, Chief Justice Jim R. Wright authored a dissenting and concurring opinion. (DAO, 1-8). In his dissenting opinion, Chief Justice Wright concluded that while the State failed to prove all the statutory elements required under TEX. PEN. CODE § 22.01(b)(2)(B) and TEX. FAM. CODE § 71.0021(b), the State did meet its burden of proof under TEX. PEN. CODE § 22.01(a)(1). (*Id.*). Thus, Chief Justice Wright held Petitioner was entitled to a new punishment hearing based on his conviction for simple assault. (DAO, 7-8).

Petitioner did not file a Motion for Rehearing with the Appellate Court.

This Petition for Discretionary Review is due to be filed on May 6, 2015; therefore, it is timely filed.

# GROUNDS PRESENTED FOR REVIEW

## Ground No. 1:

A resolution is necessary of the disagreement amongst the justices of the Appellate Court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. §§ 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

## Ground No. 2:

An important question of state law is presented that has not been, but should be, settled by this Court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. §§ 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

# ARGUMENT

**Grounds for Review Restated:**

**Ground No. 1:** A resolution is necessary of the disagreement amongst the justices of the Appellate Court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. §§ 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

**Ground No. 2:** An important question of state law is presented that has not been, but should be, settled by this Court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. §§ 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).[3]

A Class A misdemeanor assault is elevated to a third degree felony if the assault 1) is committed against a person who falls within one of the classes of individuals defined in TEX. FAM. CODE § 71.0021(b) (dating relationship), TEX. FAM. CODE § 71.003, (family) and TEX. FAM. CODE § 71.005 (household); and (2) is committed by strangulation or suffocation. TEX. PEN. CODE ANN. §§ 22.01(b)(2), 22.01(b)(2)(B) (LEXIS 2015); TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, and 71.005 (LEXIS 2015).

In the case at bar, the State charged Petitioner with a third-degree felony of assault family violence pursuant to TEX. PEN. CODE §§ 22.01(a)(1), 22.01(b)(2)

---

[3]As Ground No. 1 and Ground No. 2 involve the same facts, statutory authority, and case law, they will be addressed together.

1

(LEXIS 2015), and TEX. FAM. CODE § 71.0021(b) (LEXIS 2015). (CR 1:5). In the indictment, the State failed to include any of the statutory alternative elements found under TEX. PEN. CODE § 22.01(b)(2).

Because the State pled only one specific element under TEX. PEN. CODE § 22.01(b)(2), the sufficiency of the evidence in the case at bar is measured by the element that was actually pled—that is, TEX. FAM. CODE § 71.0021(b)---and not by any of the other statutory alternative elements included in TEX. PEN. CODE § 22.01(b)(2). *See Cada v. State*, 334 S.W.3d 766, 774 (Tex. Crim. App. 2011) (sufficiency of evidence measured by statutory elements actually pled in indictment and not by any omitted statutory alternative elements). As a result, the majority of the Appellate Court correctly found the State limited its case against Petitioner to proving that Petitioner committed an assault against a person with whom he "has or had" a "dating relationship." (AO, 6).

TEX. FAM. CODE § 71.0021 defines a "dating relationship" as a "relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (LEXIS 2015). The existence of a dating relationship is determined based on the following three factors:

(1) the length of the relationship;
(2) the nature of the relationship; and

2

(3) the frequency and type of interaction between the persons involved in the relationship.

TEX. FAM. CODE ANN. §§ 71.0021(b)(1-3) (LEXIS 2015).

The statutory definition of "dating relationship" does not include a spousal relationship. Rather, a spousal relationship is included under the definition of "family" found in TEX. FAM. CODE § 71.003. Under TEX. FAM. CODE § 71.003, a family includes "individuals related by consanguinity or affinity, as determined under *Sections 573.022 and 573.024 Government Code . . .*" TEX. FAM. CODE ANN. § 71.003 (LEXIS 2015). Two individuals are related to each other by "affinity" if they are "married to each other." TEX. GOV'T CODE ANN. § 573.024(a)(1) (LEXIS 2015).

The evidence introduced at trial established that Petitioner and Rachel Price, ("Price"), entered into a common law marriage in August of 2006 and that they were legally divorced in early 2010. (RR 4:47,50-51,67,115-16,123,DX#1). The State charged Petitioner with assaulting Price on or about December 18, 2009. (CR 1:5). As such, the evidence introduced at trial conclusively established Price and Petitioner were married on the day the State alleged the assault occurred.

The majority of the Appellate Court recognized that Petitioner and Price were indeed married at the time the alleged assault occurred and that Petitioner and Price were not simply involved in a "dating relationship" on December 18, 2009. (AO,6-

3

7). As such, the majority of the Appellate Court correctly conceded that under the facts of this case, Petitioner and Price did not "have a continuing relationship of a romantic or intimate nature" on the day the alleged assault occurred. (AO,7).

The majority of the Appellate Court then focused on the language "have had a continuing relationship of a romantic or intimate nature" as found in TEX. FAM. CODE § 71.0021(b). (*Id*.). The majority justices reasoned that because Petitioner and Price had a continuing relationship of a romantic or intimate nature *before* they entered into their common law marriage in August of 2006, then Petitioner and Price necessarily had been involved in a past "dating relationship." (AO, 8). Based on this rationale, the majority of the Appellate Court erroneously concluded Petitioner could be found guilty of the third degree felony of assault family violence pursuant to TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b). (*Id*.). As a result of t this wrongful conclusion, the majority justices affirmed Petitioner's third-degree felony conviction and upheld his six year prison sentence. (AO, 10).

The majority of the Appellate Court cited no case law directly on point to support its decision in this case. Such omission is not surprising because there is no Texas case in which an appellate court has held that a defendant can be convicted of assaulting his spouse---or for that matter his former spouse---under TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

As there is no Texas case law directly on point to support their ruling in this case, the majority justices referenced the following two unpublished memorandum opinions from sister appellate courts in an attempt to justify their flawed rationale and erroneous decision in this case:

1) *White v. State,* No. 05-09-00112-CR; 2010 TEX. APP. LEXIS 5985 (Tex. App. Dallas, July 29, 2010, pet. ref'd) (mem. op.) (not designated for publication); and
2) *Hill v. State*, No. 01-10-00926-CR; 2012 TEX. APP. LEXIS 2225 (Tex. App.–Houston [1st Dist.], March 22, 2012, no pet.) (mem. op.) (not designated for publication).

A cursory reading of *White* and *Hill* reveals that neither of these two cases involved defendants who were married to the victims at the time the assaults occurred, or for that matter, defendants who were actually married to the assault victims at any point in time. *White,* 2010 TEX. APP. LEXIS 5985 at *1-3; *Hill,* 2012 TEX. APP. LEXIS 2225 at *1-4. More importantly, neither *White* nor *Hill* held that a defendant could be convicted of a third-degree felony for assaulting his spouse based on their past dating relationship under TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b). Therefore, these two cases should not be deemed precedential authority in the case at bar.

To reach their ruling in this case, the majority justices had to disregard the forty (40) months which passed between the time Petitioner's dating relationship with Price

5

ended and the time the alleged assault occurred. Additionally, the majority justices had to set aside entirely the intervening circumstance of Petitioner's three and one-half (3½) year long common law marriage to Price.

In his dissenting and concurring opinion, Chief Justice Jim R. Wright addressed these two flaws in the majority justices' rationale in upholding Petitioner's third-degree felony conviction under TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b). Justice Wright carefully and thoughtfully discussed the use of the terms "dating relationship" and "marriage" in TEX. FAM. CODE § 71.0021 and correctly determined the Texas Legislature's intent was for these terms to be mutually exclusive. (DAO, 3).

Upon reviewing TEX. PEN. CODE § 22.01(b)(2), TEX. FAM. CODE § 71.0021(b), TEX. FAM. CODE § 71.003, and TEX. FAM. CODE § 71.005, Justice Wright further reached the conclusion that a "dating relationship" and "marriage" are addressed separately within these statutory provisions. (DAO, 6-7). After an in-depth analysis, Chief Justice Wright correctly held that as a result of the intervening circumstance of Petitioner and Price's three and one-half year (3½) marriage, Petitioner's third-degree felony conviction could not be affirmed based on their previous dating relationship under TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b) (DAO, 7).

6

In the case at bar, the State could have plead several available and applicable statutory alternative elements. However, the State chose to charge Petitioner with only a single narrow element: a dating relationship. As the evidence introduced at trial conclusively contradicted this element, there was a fatal variance between the indictment and the proof in this case.

In an attempt to side-step this fatal variance, the majority of the Appellate Court:

(1)  erroneously ignored the Texas Legislature's clear intent to distinguish between marriage and a dating relationship under TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b),

(2)  improperly discounted the inherit differences between a spousal relationship and a dating relationship; and

(3)  wrongfully overlooked the fact that Petitioner and Price had been married for approximately three and one-half (3½) years between the time they ended their dating relationship and the time the assault occurred.

Only as a result of this incorrect rationale were the majority justices able to affirm Petitioner's third-degree felony conviction which was clearly not supported by the evidence introduced at trial.

If the reasoning of the majority justices in the this case is correct, a defendant who has been married for thirty (30) years can be convicted of a third-degree felony for assaulting his spouse under TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b) based simply on their past dating relationship which occurred thirty-one

7

(31) years ago. Likewise, if the majority of the Appellate Court is right, there is no need for the Texas Legislature to have included the term "marriage" in TEX. FAM. CODE § 71.0021(b), as a spousal relationship is non-distinguishable and becomes secondary to a "dating relationship" under this statutory provision.

Accordingly, this Court should grant this Petition for Discretionary Review to (1) to resolve the disagreement amongst the justices of the Eleventh Court of Appeals; (2) answer a question of first impression; and (3) establish much needed precedential authority upon which both the State and married defendants may rely in the future when charges are brought pursuant to TEX. PEN. CODE § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

## CONCLUSION AND PRAYER FOR RELIEF

*WHEREFORE, PREMISES CONSIDERED*, Petitioner Luis Sanchez respectfully prays that this Court grant his Petition for Discretionary Review and, after full briefing on the merits, the Court issue an opinion 1) reversing the Appellate Court's majority ruling affirming Petitioner's third-degree felony conviction for assault family violence, 2) affirming Petitioner's conviction for simple assault, and 3) remanding this case for a new trial solely as to punishment.

Petitioner also prays that this Court grant him such other and further relief to which he may be entitled.

Respectfully submitted,


**M. MICHELE GREENE**
Attorney at Law
2833 Wildwood Ave.
Odessa, Texas 79761
Tel:  (432) 238-1255
Email: mmg@michelegreenelaw.com


By:    /s/ M. Michele Greene
M. Michele Greene
State Bar No.00789966

**Appellate Counsel for Petitioner**
**Luis Sanchez**


## CERTIFICATE OF COMPLIANCE

In accordance with Rules 9.4(e) and (i) of the TEXAS RULES OF APPELLATE PROCEDURE, the undersigned attorney of record certifies that the Petition for Discretionary Review contains **14-point** typeface for the body of the brief, **12-point** typeface for footnotes in the brief, and contains **1,854** words, excluding those words identified as not being counted in Rule 9.4(i)(1) and was prepared on Word Perfect Version 9.


/s/ M. Michele Greene
M. Michele Greene

# CERTIFICATE OF SERVICE

I certify that a copy of the Petition for Discretionary Review was served electronically on this the 19[h] day of April, 2015, to the following party and that the electronic transmission was reported as complete:

Michael Bloch
Ector County District Attorney's Office
Ector County Courthouse
300 N. Grant Ave. Rm. 305
Odessa, Texas 79761
MICHAEL.BLOCH@ectorcountytx.gov.

**Attorney for Respondent**


/s/ M. Michele Greene
M. Michele Greene

10

**APPENDIX**

**APPENDIX A**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00279-CR

_____

## LUIS SANCHEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No.  B-37,135**

### O P I N I O N

The trial court found Luis Sanchez guilty of assault-family violence for assaulting a person with whom he "has or has had" a dating relationship, a third-degree felony.  It assessed Sanchez's punishment at confinement for a term of six years and a $7,500 fine.  *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (West Supp. 2014).   In a single issue on appeal, Appellant challenges the sufficiency of the evidence to support a finding that he "has or has had" a dating

relationship with the victim at the time of the alleged assault, and he also challenges the sufficiency of the evidence to support a finding that he committed an assault. We affirm.

Appellant and the victim in this case, Rachael Price, lived together in the same household from sometime in 2006 until December 18, 2009, the date of the assault. At some point during that time, Appellant and Rachael became married by virtue of the common law, and they also had a child together.

Rachael testified that, on the afternoon of December 18, she was watching television in her bedroom. The couple's two-year-old daughter was in a crib next to the bed. Appellant came into the bedroom, "threw" Rachael on the bed, and began "beating" her. Rachael did not know why Appellant was upset, but after he hit her in the head and on her side for a few minutes, he stopped hitting her. Rachael took their child into the bathroom and put her into a small tub to give her a bath. A short time later, Appellant returned. When he returned, Appellant pushed Rachael down to the floor and "started kicking [her] and hitting [her]." Appellant picked her up and held her by the throat with one hand while he held a knife to her throat with the other. Appellant told her that he would stop "if [she] told him the truth and confessed" to the many affairs in which he thought that Rachael was involved. Appellant eventually released Rachael and left the room.

After the second assault of the day, Rachael finished bathing the child and returned to her bedroom. An hour later, Appellant came back into the bedroom and dragged Rachael by her hair to an empty bedroom. Appellant wanted Rachael to call her coworker because Appellant believed that Rachael had been having an affair with the coworker's cousin. Appellant wanted Rachael to ask her coworker for the cousin's phone number. Rachael testified that Appellant wrapped a telephone cord around her neck and forced her to make the phone call. The cord was tight and restricted her breathing. She was short of breath and could hardly

2

speak during the phone call; her coworker asked her what was wrong. After Rachael ended the call with the coworker, Appellant released the phone cord, shoved her into a wall, and then left. These December 18 assaults were not the only times that Appellant had assaulted Rachael. Rachael also described the almost daily abuse that she had suffered at Appellant's hands in the weeks leading up to the December 18 assaults.

When Appellant finally stopped assaulting her, Rachael "tried to call in" to her employer, but the manager at the Walgreens store where she worked told her that she would probably be fired if she did not come to work that night; therefore, Rachael took the bus and went to work.

Rachael's father, Michael Weldon Price, picked her up after work. Because Rachael did not want to go home, she stayed at her father's house that night. The next morning, Appellant was "pounding on the door," and Michael called 911. Appellant left before the police arrived. The following day, while Appellant was in jail, he tried to phone Rachael. Michael answered the phone and refused to let Appellant talk to Rachael. During that phone call, Appellant told Michael, "I know. I am sorry. I did those things. I did all of those terrible things, but I still love Rachael and I want us to be a family."

Rachael first reported the assault to police on December 20. At that time, one Odessa police officer took her statement, and another took pictures of her injuries. Detective Angie Reyes interviewed Rachael. Rachael told Detective Reyes about the assault and about the almost daily abuse that she had suffered before the December 18 assaults. Detective Reyes obtained Rachael's medical records. The records showed that, in addition to the treatment for the December 18 injuries, Rachael was treated at an emergency room in Odessa on December 8 for an assault that she said had occurred on December 3. As a result of the December 3 assault, Rachael suffered significant swelling and bruising to her left

hip and thigh, both eyes, and one of her hands; she was prescribed pain medicine. Rachael had claimed that she suffered those injuries when she was attacked on the way to a bus stop. During her interview with Detective Reyes, Rachael admitted that she had lied and that Appellant caused those injuries as well.

Detective Reyes phoned Appellant. When she identified herself as a detective with the Odessa Police Department, the call was disconnected. Appellant later phoned Detective Reyes and agreed to come to the police station for an interview; he neither appeared nor phoned, nor did he reschedule the interview. Because she believed that the evidence was consistent with Rachael's story, Detective Reyes obtained a warrant for Appellant's arrest. In March 2010, the grand jury returned an indictment against Appellant for the third-degree felony assault upon Rachael, a person with whom he "has or has had" a dating relationship.

Appellant pleaded not guilty to the charge in the indictment and proceeded to trial on the theory that he did not assault Rachael and that he did not cause her injuries. The trial court disagreed and found Appellant guilty of third-degree felony assault as charged in the indictment.

We first consider Appellant's argument that the State failed to offer any evidence to prove the elements necessary to increase the assault offense from a Class A misdemeanor to a third-degree felony as alleged in the indictment. To increase the assault in this case to a third-degree felony, the State specifically alleged that Appellant impeded normal breathing or circulation of "Rach[a]el Price, a person with whom [Appellant] has or has had a dating relationship, as described by Section 71.0021(b), Family [C]ode." *See* TEX. FAM. CODE ANN. § 71.0021 (West 2014). Appellant argues that the State presented no evidence at trial that such a "dating relationship" existed between Rachael and him at the time of the assault. Appellant maintains that the evidence conclusively established that

4

he and Rachael were married at the time of the assault.  It is Appellant's position that, because he and Rachael were married at the time of the alleged assault, Rachael was not a person with whom he "has or has had" a dating relationship. Therefore, Appellant urges that, because he was married to Rachael at the time of the alleged assault and not in a dating relationship with her, the trial court could not convict him of third-degree felony assault as expressly charged in the indictment.  We disagree.

Appellant's position is founded in part on the fact that in June 2010, subsequent to the date of the alleged assault, Rachael filed a petition for divorce. In that petition, she sought a divorce from Appellant and alleged that he was "guilty of cruel treatment . . . of a nature that renders further living together insupportable."  A trial court eventually granted Rachael's petition for divorce from Appellant prior to Appellant's trial on the criminal charges.

Appellant's first challenge to the sufficiency of the evidence is actually a complaint about a variance between the allegations in the indictment and the proof at trial.  *See Gollihar v. State*, 46 S.W.3d 243, 247 (Tex. Crim. App. 2001).  "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument."  *Id.* at 246.  "A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial."  *Id.*

The State argues that, "[e]ven assuming for the sake of argument that a common-law marriage was indisputably established here, in cases involving a sufficiency claim based on a variance," the reviewing court does not apply traditional sufficiency standards but "must instead consider the materiality of the variance."  The State argues that the variance in this case was immaterial and that the evidence is, thus, sufficient to support the conviction.

5

The Court of Criminal Appeals has instructed, however, that "Texas 'immaterial variance' law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment." *Cada v. State*, 334 S.W.3d 766, 774 (Tex. Crim. App. 2011). Due process requires the State to prove every element of the crime charged. *Id.* at 772–73 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "The focus of the inquiry under . . . *Gollihar* 'is upon the elements of the offense.'" *Id.* at 773 (quoting *Gollihar*, 46 S.W.3d at 258 (Keller, P.J., concurring)). The "elements of the offense" are the elements that the State is required to plead and prove. We measure the sufficiency of the evidence by the specific elements that the State has alleged in the indictment. *Id.* at 773–74. "Thus, if the State pleads one specific element from a penal offense that contains alternatives for that element, the sufficiency of the evidence is measured by the element that was actually pleaded, not any other statutory alternative element" that was not pleaded. *Id.* at 774.

An actor commits third-degree assault by, among other ways not relevant here, impeding the normal breathing or circulation of the blood of a person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. The "person" mentioned in the statute includes persons involved with the actor in several different types of situations as provided in Sections 71.0021(b), 71.003, 71.005 of the Texas Family Code. However, insofar as this case is concerned, the State limited its charge to a "person" with whom Appellant "has or has had" a dating relationship. PENAL § 22.01(b)(2)(B); *see* FAM. §§ 71.0021(b), 71.003, 71.005. A dating relationship is defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." FAM. § 71.0021(a)(1)(A), (b).

As a result of the intervening divorce proceedings, the evidence conclusively negates the possibility that the alleged assault occurred between individuals who

6

"have" a dating relationship. In this regard, we agree with the dissent's proposition that individuals in a marriage are not in a dating relationship. Accordingly, we direct our attention to the "have had" element of Section 71.0021(b). Specifically, we must determine if the evidence establishes that the alleged assault occurred between individuals who "have had" a dating relationship. *Id.*

When we construe a statute, we attempt to determine the intent or purpose of those who enacted the statute. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). We first examine the literal text of the statute. *Id.* In so doing, "we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008). We are required to "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997).

There are at least two decisions in which the appellate courts of this State dealt with the "dating relationship" issue with respect to the "have had" element of the statute. In *White*, decided in an unpublished opinion by the Dallas Court of Appeals, the defendant was convicted of first-degree aggravated assault. *White v. State*, No. 05-09-00112-CR, 2010 WL 2951748 (Tex. App.—Dallas July 29, 2010, pet. ref'd) (mem. op., not designated for publication). There, the defendant and the victim dated for about two months. They ceased dating a few weeks before the assault. The State alleged in the indictment that the defendant "has or has had a dating relationship with the complainant and was a member of her family and household." *Id.* at *2. The court held that the fact that the defendant and the victim had stopped dating shortly before the assault was irrelevant because Section 71.0021(b) provided that a dating relationship included persons who *have had* a

7

continuing romantic or intimate relationship. *White* is instructive in the case before us, and we see nothing that would require a different application here.

*Hill* is another case in which an appellate court addressed Section 71.0021(b). *Hill v. State*, No. 01-10-00926-CR, 2012 WL 983338 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication). The State charged Hill with assaulting a person with whom he had a dating relationship. Hill claimed that the evidence was insufficient to prove that he had a dating relationship with the complainant. Hill and the complainant "lived together from 2006 until 2007" and for a few days in 2008. Hill offered conflicting evidence about the date of the breakup of that relationship. He initially said that he and the complainant stopped dating the year before the assault. Later, he said that the breakup occurred only a month before the assault. It was Hill's claim that the State was required to prove that the relationship was ongoing at the time of trial and that, in the absence of that proof, the evidence was insufficient.

The court in *Hill* rejected Hill's argument because that position "would render the words 'have had' meaningless." *Id.* at *3 The court concluded "that the inclusion of the words 'have had' permitted the jury to find that a dating relationship existed if it found that Hill and [the victim] had a continuing relationship of a romantic or intimate nature in the past, regardless of whether that relationship was ongoing at the time of the assault." *Id.*

We agree with the holdings in *White* and *Hill* that the "have had" element of Section 71.0021(b) eliminates the requirement of an ongoing dating relationship at the time of the alleged assault. Accordingly, we conclude that, because Appellant and Rachael had a dating relationship in the past, such a relationship falls within the provisions of the statute that increase this assault to a third-degree felony.

Appellant also argues that the evidence is insufficient to prove that he committed the offense of assault. When we review the sufficiency of the evidence,

we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 316; *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012). This standard requires us to defer to the factfinder to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences to reach ultimate facts. *See Jackson*, 443 U.S. at 316; *Gross*, 380 S.W.3d at 185. The factfinder is the sole judge of the credibility of the witnesses, and it is free to accept or reject any or all of a witness's testimony. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." PENAL § 22.01(a)(1). Bodily injury means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8) (West Supp. 2014).

Rachael testified that Appellant beat her, dragged her by her hair, held a knife to her throat, wrapped a telephone cord around her neck, and forced her to phone her coworker to obtain the cousin's phone number. Rachael testified that the cord was tight and restricted her breathing and that she could hardly speak during the phone call. When Appellant finally released Rachael, he shoved her against the wall and left the room. Rachael had marks on her neck when she went to work that evening. The State introduced into evidence thirteen photographs of Rachael's injuries. The photographs were taken two days after the assault, and the marks were still visible at that time. Rachael testified that the mark on her neck shown in one of the photographs was caused by Appellant when he tightened the phone cord around her neck. This evidence is sufficient to support a finding that Appellant committed the assault.

It is Appellant's contention that Rachael's testimony is not credible in light of the fact that Rachael had given different explanations for her injuries in the past.

9

Appellant argues that "[a] small scratch on [Rachael's] neck did not prove beyond a reasonable doubt that [Appellant] kicked her, beat her, drug her down the hall by her hair, and attempted to strangle her by wrapping an extension cord around her neck." That, however, is not the only evidence of assault. The pictures showing the marks on Rachael's neck support her testimony that Appellant assaulted her. Because of Rachael's credibility, Appellant contends that, without tangible evidence, expert testimony, or medical records to support her allegations, the evidence is insufficient to show that he assaulted Rachael. As discussed above, the factfinder is free to believe or disbelieve a witness. *See Saxton,* 804 S.W.2d at 914.

We have reviewed the evidence in accordance with the well-established standards of review, and we conclude that there is sufficient evidence to support a conclusion that Appellant intentionally, knowingly, or recklessly caused bodily injury to Rachael Price. Appellant's sole issue on appeal is overruled.

We affirm the judgment of the trial court.


JOHN M. BAILEY
JUSTICE

March 5, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

10

**APPENDIX B**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00279-CR

_____

**LUIS SANCHEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No.  B-37,135**

## DISSENTING AND CONCURRING OPINION

Because I believe that the legislature did not intend to include within the purview of Section 22.01 all persons who had ever dated in their lifetime, and because I believe that marriage is not included within the term "dating relationship," I would reverse the conviction for the third-degree felony, but I would join the majority opinion in which they find sufficient evidence to convict

Appellant of the Class A misdemeanor assault and would remand to the trial court for a new punishment hearing.

In order to address Appellant's first argument, I believe that this court must decide whether the state of "marriage" is included within the term "dating relationship"—again, that being "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2014). At the risk of seeming to be insensitive to the nature of a marriage relationship, I do not believe, for a number of reasons, that the legislature contemplated that "marriage" should be included within the definition of "dating relationship."

The majority has set forth the standards to use when a court determines the legislative intent that lies behind a statute. I need not repeat them here. With those standards in mind, I would note first that, in Section 71.0021 of the Family Code, the legislature twice refers to "marriage to *or* dating relationship with an individual with whom the actor is or has been in a dating relationship *or* marriage." FAM. § 71.0021(a)(1), (b)(2)(B) (emphasis added). If marriage was included within the term "dating relationship," the legislature had no need to mention the two disjunctively. Otherwise, the use of the phrase "or marriage" is rendered meaningless, thus indicating that the two relationships are separate and distinguishable.

Furthermore, Section 71.0021(b) instructs that the existence of a dating relationship is to be determined based upon a consideration of the following: "(1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." FAM. § 71.0021(b). Those considerations are of no use in a determination of whether a marriage exists or has existed; they only find utility when we determine whether a dating relationship exists or has existed.

Additionally, Section 71.0021(c) specifically excludes "[a] casual acquaintanceship or ordinary fraternization in a business or social context" from the definition of "dating relationship." FAM. § 71.0021(c). Again, that language has no applicability to marriage, but only to a dating relationship. For these reasons alone, I believe that the terms "dating relationship" and "marriage" are mutually exclusive as used in this legislation.

There are other reasons that lead me to conclude that the State cannot use the term "dating relationship" to support the third-degree felony conviction in this case. The statute first provides that a dating relationship "means a relationship between individuals who *have* . . . a continuing relationship of a romantic or intimate nature." FAM. § 71.0021(b) (emphasis added). The use of the present tense verb "have" indicates that the dating relationship is ongoing at the time of the assault. Although the relationship is hopefully a romantic and intimate one, sadly, that is not always the case. Persons who are married are engaged in much more than a dating relationship. I propose that the legislature contemplated that dichotomous concept; otherwise, it would not have used the term "dating relationship *or* marriage" disjunctively in the parts of the statute to which I referred earlier in this opinion.

Next, the statute includes within its definition of "dating relationship" those relationships "between individuals who . . . *have had* a continuing relationship of a romantic or intimate nature." FAM. § 71.0021(b) (emphasis added). *Have had* is of the present perfect tense classification of verbs. The present perfect tense utilizes the verb *has* or *have* and can be used (1) to represent an action that has been completed recently, (2) to represent an action that has been completed at some indefinite time in the past, or (3) to represent an action that began in the past and continues into the present. Our focus should be upon discovering which one of those uses the legislature intended when it used the term *has had* in connection

3

with the term "dating relationship." To me, it seems to be reasonable that the legislature did not use the term to represent an action that began in the past and continues in the present because the parties were married, not dating, at the time of the assault and because the same facts would be accomplished as would the use of the present tense; this use of the present perfect tense would render "have . . . a continuing relationship" meaningless.

As to the second possible use of the present perfect tense, if it were not for my belief that the legislature, by its disjunctive presentation of the concepts of dating relationships and marriage in other parts of the applicable statutes, separated the two types of relationships, I might feel constrained to say that, at some indefinite point in the past, Appellant and Rachael dated and therefore *had been* in a dating relationship such as would support the finding of guilt in this case. However, that would mean that it would not matter when a dating relationship existed, even decades prior, and would give no regard to intervening circumstances, so long as the relationship ended at some indefinite time prior to the time of an assault for which the State charges a person. The words that the legislature actually used do not indicate to me that the legislature intended that result.

Further, laying aside my expressed belief that the legislature has explicitly separated dating from marriage in parts of this statute, if the legislature intended that the statute was to be applied to parties who had ever been in a dating relationship—no matter how far antecedent to the assault—and with no consideration to an intervening marriage or other circumstance, then the past perfect tense was available to the legislature to accomplish that result. The past perfect tense uses the verb *had* and describes action that happened at a time earlier than a specific time or action in the past. Had the legislature intended to include dating relationships that had ever existed in a person's lifetime, then it could have

4

written the statute so that the term would include persons who *had had* a dating relationship.

The only use, then, that the legislature could have intended is that, to "have had" a dating relationship, the dating relationship must have recently ended. I do not know, nor do I think it necessary for us to decide in this case, the limits of the word "recently" because I think that, as a matter of law, a period from 2006 to December 18, 2009, does not fit within the concept of "recently."

I am mindful of the two appellate court decisions cited by the majority in support of their position. In each of those cases, the courts dealt with the "dating relationship" issue.

I do not see *White*, as being in opposition to that which I suggest in this dissent. There, there were no intervening issues such as marriage, and the period of time that the relationship existed was two months as opposed to two and one-half years as in this case. *White v. State*, No. 05-09-00112-CR, 2010 WL 2951748 (Tex. App.—Dallas July 29, 2010, pet. ref'd) (mem. op., not designated for publication). Such a situation clearly fits the language used by the legislature. If the Dallas court is opining that *have* and *have had* are two separate things, then I agree to the extent such is not inconsistent with respect to the distinct tenses of the two verbs.

Neither do I see *Hill* as being contrary to my position here. It was Hill's position that the State was required to prove that the relationship was ongoing at the time of trial and that, in the absence of that proof, the evidence was insufficient. *Hill v. State*, No. 01-10-00926-CR, 2012 WL 983338 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication). As stated by the majority, the court in *Hill* rejected Hill's argument because that position "would render the words 'have had' meaningless." *Id.* at *3. Again, the Houston court held "that the inclusion of the words 'have had'

5

permitted the jury to find that a dating relationship existed if it found that Hill and [the victim] had a continuing relationship of a romantic or intimate nature in the past, regardless of whether that relationship was ongoing at the time of the assault." *Id.*

*Hill* did not involve the question of marriage as an intervening circumstance, and there was evidence in *Hill* that the relationship had ended just one month prior to the assault. Those are sufficient differences to distinguish this case from *Hill*.

There are yet other reasons that support Appellant's position in this case. Section 22.01 of the Penal Code includes within its third-degree felony provisions those persons listed in Section 71.003. PENAL § 22.01(b)(2). Those persons are denominated "Family" and are "individuals related by consanguinity or affinity, . . . individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together." FAM. § 71.003. The State did not charge Appellant under this portion of the statute, although it clearly could have.

Section 22.01 of the Penal Code includes within its third-degree felony provisions those persons listed in Section 71.005 of the Family Code. PENAL § 22.01(b)(2). Section 71.005 refers to "Household" and defines that concept as "persons living together in the same dwelling, without regard to whether they are related to each other." FAM. § 71.005. The State did not charge Appellant under this portion of the statute.

The offense of assault is enhanced from a Class A misdemeanor to a third-degree felony when the assault is committed against certain classes of people in addition to those included within the definition of "dating relationship." It is clear that Rachael was a member of more than one of the classes described in Section 22.01. The evidence conclusively establishes that, at the time of the assault,

6

Appellant and Rachael were married, that they were parents of the same child, and that they were members of the same household. He could have been charged under any of those third-degree felony provisions. However, the State did not allege any of those other relationships in the indictment.

"Under *Jackson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory element that it did not allege." *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011); *see Jackson v. Virginia*, 443 U.S. 307 (1979). I recognize that there may be some overlap between the categories, as evidenced in this case, but the nature of each relationship is nevertheless distinct. The State did not allege that the assault was committed against a member of some other class named in Section 22.01 of the Penal Code but, rather, limited itself to the "dating relationship" provision of the statute. I would hold that the State alleged a single narrow element for which I find no support in the evidence.

I do not fault the State for charging Appellant as it did. I recognize that it is not always easy to define the nature of the relationship between two parties to the exclusion of all characterizations. And perhaps the State was not aware of the divorce or the marriage between Rachael and Appellant. However, as the Court of Criminal Appeals has explained, "when there is overlap or uncertainty . . . the State may plead alternatives in the indictment." *Cada*, 334 S.W.3d at 772. In this case, the State did not plead any of the several available and applicable alternatives. I would find that there was a variance between the indictment and the proof. Because we do not consider materiality of the variance, I would conclude that the variance is fatal. *See id.* at 776.

However, I join in that portion of the majority opinion in which it finds the evidence sufficient to support the finding that Appellant committed the offense of assault and I would remand this case to the trial court for a new punishment

7

hearing.  *See* TEX. R. APP. P. 43.2(d); *Thornton v. State*, 425 S.W.3d 289, 306–07 (Tex. Crim. App. 2014).


JIM R. WRIGHT

CHIEF JUSTICE


March 5, 2015

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.