**MODIFY and AFFIRM; and Opinion Filed August 5, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00172-CR

**DAVID S. HERNANDEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1800047-N**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Brown

Following a jury trial, David Hernandez appeals his conviction for aggravated robbery with

a deadly weapon. In six issues, appellant contends the evidence is insufficient to support the

conviction, the jury charge was erroneous, and the judgment needs to be reformed. We agree that

the judgment needs to be modified to delete recitations involving a second enhancement paragraph.

As modified, we affirm.

FACTUAL BACKGROUND

The indictment in this case alleged:

That [appellant] . . . on or about the 18th day of March, 2017, in the County
of Dallas, State of Texas, did while in the course of committing theft of property
and with intent to obtain or maintain control of the property, intentionally,
knowingly, and recklessly cause bodily injury to [L.J.] . . . by striking complainant
with an air pistol, and the defendant did then and there use or exhibit a deadly
weapon, to-wit: an air pistol.

It also contained one enhancement paragraph which alleged appellant had a 2012 conviction for burglary of a habitation out of Dallas County.

At trial, Dallas Police Officer Gregory Chappell testified that early on the morning of March 18, 2017, he was dispatched to Parkland Hospital because a patient had come in who appeared to be the victim of a robbery. Chappell met with L.J. in the emergency room. She had a bandage over her right eye. Based on what L.J. told him, the officer put together a report with a description of her assailant and his vehicle.

The police had information the car, a gray Mercury Mountaineer, might contain the type of large water jug that "you tip upside down and stick on the stand." Two days after the offense, police located a possible match. The vehicle contained a large water jug and was parked at the Super 7 Motel, not far from the offense location. While officers were looking at the vehicle, its owner, appellant, approached them and asked what they were doing. Appellant was arrested for "traffic tickets."

L.J., who has since moved to Florida, testified that she used to work as a prostitute in Dallas in the Harry Hines area. On March 18, 2017, she had a room at the Walnut Inn. She left the hotel to walk down Harry Hines. At about 1:00 a.m., she was approached by a man, whom she identified in court as appellant, in a "silver Mercury Jeep" in front of an auto parts store. They agreed on a fee for L.J.'s services. Appellant agreed to go to L.J.'s room. Before L.J. got in appellant's car, she looked inside as a precaution. She saw construction materials and a water jug in the second row of the car. She did not see a person in the second row. She did not look in the third row/hatch.

Instead of driving in the direction of L.J.'s hotel, appellant pulled into a dark part of the store parking lot. He put his hand down on the driver's side. L.J. asked him what he was doing. When appellant raised his hand, he "had a gun to [L.J.'s] head." Appellant said and repeated, "You tookie me money." A second person came out from the hatch and put L.J. in a chokehold.

–2–

L.J. begged appellant not to kill her and told him he had the wrong person. She could not get out of the car. Appellant hit her several times on her face with the gun, and his friend beat her over the head from the back seat. L.J. believed appellant had a real gun, a .38. She later found out it was an air pistol. Appellant said something to his friend in Spanish. It was the first time she heard appellant speak Spanish. The friend got out of the car, opened the passenger door, dragged L.J. out by her hair, punched her in the face, and threw her by the trash can. L.J. testified, "They took my purse, took my phone. He took my money." Later, when asked how much money "he" took, L.J. said $200 cash from her bra, plus about $20 from her purse. L.J. went to the hospital, where her face was stitched up and she was diagnosed with a subarachnoid hemorrhage. Two days later, L.J. picked appellant out of a photo lineup as the man who drove the vehicle and struck her with the gun. She was not able to identify the second man.

A police crime scene analyst processed appellant's Mercury Mountaineer at the pound. He found a BB gun in the car in a pocket on the driver's side door. The gun looked like a normal gun, but was made out of plastic. There were no BBs in it. The analyst was not able to lift any fingerprints from the vehicle, gun, or water jug. There were spots in the car that looked like blood, but a presumptive test for blood was negative. He also swabbed the barrel and trigger areas of the gun and sent the swabs to the lab.

A serologist at the Southwestern Institute of Forensic Sciences tested a swab taken from the barrel of the gun. She did not have enough of a sample to do a confirmatory test, but a presumptive test was positive for blood. A DNA analyst with SWIFS testified that the swab taken from the trigger contained a mixture of three contributors and appellant was a possible contributor. Appellant's inclusion was not a "strong inclusion," as one out of every 29 people would be included. The swab from the barrel contained a two-person mixture. The primary contributor was an unknown male.

Detective Meagan Mulvihill investigates robberies for the DPD. Mulvihill testified that a BB gun is otherwise known as an air pistol and can be used as a deadly weapon. She identified the BB gun recovered from appellant's car. She read the warning on the gun, which included "Misuse or careless use may cause serious injury or death." She further testified that a BB gun could be used as a deadly weapon by hitting someone on the head.

After his arrest, appellant agreed to speak to police. Mulvihill and a detective who spoke Spanish interviewed him. According to Mulvihill, appellant initially stated he was not in the Harry Hines area at the time of the offense. He eventually admitted he was the driver of the car, but "tried to place anything involving the gun or assaulting the complainant on the second suspect" in the car. According to appellant, the man in the back of his car had been looking for a certain prostitute for two weeks. The second suspect claimed the prostitute had previously robbed him, and he had "gone looking for her in retribution." Appellant and the second man planned to find the robber on Harry Hines. Mulvihill testified that L.J. denied any involvement in a robbery.

Appellant testified at trial through an interpreter. He said that before the night in question he had seen L.J. about five times and said they had previously had sex in his truck. On March 17, he had been drinking and doing cocaine with a friend named Jesus Rodriguez. They planned to go to a club, but stopped on Harry Hines to buy drugs from "Cycle," who appellant said was L.J.'s pimp. Cycle sold drugs from a van at the auto parts store and L.J. helped deliver them. L.J. was waiting for appellant and his friend that night. Appellant stopped next to her and lowered his car window. L.J. asked if he had the money and he said yes. L.J. asked if she could get in appellant's car because police were patrolling the area. Rodriguez climbed into the back seat, and L.J. got in the car. L.J. grabbed $120 from appellant that he had in his hand to pay for the drugs. She ran from the truck without leaving the drugs. Rodriguez grabbed a water jug from the back seat and ran after L.J. Rodriguez hit her on the back with it.

–4–

Appellant denied robbing L.J. He did not take her money, purse, or phone. He said he never touched her. He also testified the BB gun was not his and that he had never seen it. He did not see anyone hit L.J. with a pistol. According to appellant, he earns $19 an hour working in construction and had no need to rob anyone, "much less a woman of the streets."

After the defense rested, the State re-called Detective Mulvihill. The State offered into evidence body cam video from the detective's interview of L.J. in the hospital and a certified translation of appellant's interview with police. Mulvihill read from the translation.

The court's charge instructed the jury on the law of parties. It gave the jury three options. The jury could find appellant guilty of aggravated robbery as charged, find him guilty of the included offense of robbery, or find him not guilty. The jury found appellant guilty as charged. The trial court assessed his punishment at 25 years' confinement.

### SUFFICIENCY OF THE EVIDENCE

We first address appellant's challenge to the sufficiency of the evidence. In issue three, he contends the State failed to prove that a robbery occurred. In issue four, he contends the evidence is insufficient to show he used or exhibited a deadly weapon.

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a). As charged in this case, a person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 29.02(a)(1). A person commits aggravated robbery if he commits robbery and the State proves an aggravating factor. *Sweed v. State*, 351 S.W.3d 63, 69 (Tex. Crim. App. 2011). In this case, the aggravating factor was the use or exhibition of a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2). The indictment charged appellant with committing robbery as set out in penal code section 29.02(a)(1) and using or exhibiting a deadly weapon, an air pistol.

When reviewing appellant's complaint about the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a factfinder was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge for the case. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Temple*, 390 S.W.3d at 360.

Appellant's arguments about the sufficiency of the evidence of robbery amount to a challenge to L.J.'s credibility. Citing his "financial resources," appellant asserts he had no need to rob L.J. He also argues L.J. was the one who committed robbery. He references his trial testimony about L.J. taking his drug money from him and his statement to detectives indicating L.J. had previously robbed Rodriguez. Appellant ignores L.J.'s testimony that appellant and/or Rodriguez robbed her. L.J. testified that they took her purse, phone, and cash. To the extent the record is unclear whether it was appellant and/or Rodriguez who physically took L.J.'s property from her, the law of parties authorized appellant's conviction for Rodriguez's conduct. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (person is criminally responsible for offense committed by conduct of another if, acting with intent to promote or assist the commission of offense, he solicits, encourages, directs, aids, or attempts to aid other person to commit offense). The evidence showed they acted together to commit the offense. Appellant gave multiple versions of the events of that night—he was nowhere near the crime scene, L.J. had previously robbed Rodriguez and Rodriguez was looking for retribution, and L.J. stole appellant's drug money. The jury was entitled to credit

–6–

L.J.'s account of the incident and discredit appellant's testimony that he did not rob her. We will not disturb the jury's evaluation of the credibility of the witnesses.

Appellant's complaint about the sufficiency of the evidence to show he used or exhibited a deadly weapon also fails. He does not dispute that an air pistol or BB gun can be a deadly weapon. He argues there is an "absence of proof that Rodriguez used or exhibited the air soft pistol during the offense or that Appellant knew Rodriguez would do so." Appellant again cites his own testimony and ignores L.J.'s testimony that appellant personally used the air pistol to hit her in the face. Again, the jury was free to believe L.J.'s testimony and disbelieve appellant's. We overrule appellant's third and fourth issues.

### ALLEGATIONS OF CHARGE ERROR

In his fifth and sixth issues, appellant complains of alleged errors in the jury charge. In issue five, he contends the charge failed to "require that any conviction be based on the grounds alleged in the indictment." In issue six, he contends the charge failed to require the jury to unanimously agree he committed the offense. Appellant made no objections to the charge.

We review complaints of jury charge error by first determining whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as here, an alleged jury charge error was not objected to, we reverse only if an error was "so egregious and created such harm that the defendant has not had a fair and impartial trial." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm consists of errors affecting the very basis of the case or depriving the defendant of a valuable right. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). We assess harm in light of "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative

evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id.*

The charge may not enlarge the offense alleged and authorize the jury to convict a defendant on a basis or theory permitted by the jury charge but not alleged in the indictment. *See Distefano v. State*, 532 S.W.3d 25, 38 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Appellant argues the charge authorized conviction for aggravated robbery under penal code section 29.03(a)(2), which was the theory alleged in the indictment, but also under section 29.03(a)(1), which was not alleged in the indictment. As discussed above, under section 29.03(a)(2), the aggravating factor is the use or exhibition of a deadly weapon. Under section 29.03(a)(1), the aggravating factor is causing serious bodily injury to another. The indictment alleged appellant committed robbery by causing bodily injury, but it did not allege serious bodily injury as the aggravating factor. The abstract definition of aggravated robbery in the charge included the aggravating factors found in both section 29.03(a)(1) and (a)(2)—causing serious bodily injury or using or exhibiting a deadly weapon. The charge also contained definitions of both bodily injury and serious bodily injury. Appellant argues the charge improperly allowed the jury to convict if it found he caused serious bodily injury during the robbery and that he was egregiously harmed by this error.

Contrary to appellant's argument, the charge did not authorize conviction for aggravated robbery causing serious bodily injury. It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Id.* An abstract charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory. *Id.* Generally, reversible error occurs in the giving of an abstract instruction only when the

instruction is an incorrect or misleading statement of a law that the jury must understand to implement the commands of the application paragraph. *Id.*

Here, the application paragraph tracked the language of the indictment and required the jury to unanimously find beyond a reasonable doubt that appellant:

> either acting alone or with another as a party, did then and there intentionally, knowingly, or recklessly while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause bodily injury to [L.J.] . . . by striking complainant with an air pistol, and you further find beyond a reasonable doubt that the defendant did then and there use or exhibit a deadly weapon, to-wit: an air pistol.

The complained-of definitions in the charge were correct statements of the law. They were not incorrect or misleading statements that the jury needed to understand to implement the commands of the application paragraph. *See id.* at 467. Appellant has not shown that the charge authorized conviction for aggravated robbery causing serious bodily injury. We overrule appellant's fifth issue.

In issue six, appellant asserts the trial court erred by failing to require the jury to unanimously agree that he committed the offense. His argument is related to the one made in issue five. He argues the charge authorized the jurors to divide into "three camps": 1) those who agreed on the charged offense of bodily injury/deadly weapon, 2) those who believed appellant caused serious bodily injury, and 3) those who believed appellant was responsible for Rodriguez's conduct that caused serious bodily injury.

Both the Texas Constitution and the code of criminal procedure require unanimous verdicts in all felony cases. *Leza v. State*, 351 S.W.3d 344, 356 (Tex. Crim. App. 2011). Jury unanimity is required on the essential elements of the offense, but is generally not required on the alternate modes or means of commission. *Id.*

One of our sister courts has held that in an aggravated robbery case, unanimity is not required as to the aggravating factor. *See Woodard v. State*, 294 S.W.3d 605, 608–09 (Tex. App.—

Houston [1st Dist.] 2009, pet. ref'd) (citing *Landrian v. State*, 268 S.W.3d 532, 539 (Tex. Crim. App. 2008)). Even if we assume it was required, there was only one possible aggravating factor in this case. As stated, the charge did not authorize conviction for aggravated robbery causing serious bodily injury. It authorized conviction for aggravated robbery with a deadly weapon. Thus, it is not possible that the jurors could have been in different "camps" regarding the aggravating factor. Further, a jury is not required to unanimously determine whether a defendant is guilty as a principal actor or as a party. *Leza*, 351 S.W.3d at 357; *Torres v. State*, 560 S.W.3d 366, 376 (Tex. App.—San Antonio 2018, no pet.). Penal code section 7.02, which defines party liability, describes alternative manners by which an accused may be held accountable for another's conduct, not the elements of the underlying offense. *Leza*, 351 S.W.3d at 357. Thus, appellant's argument about the "third camp" fails.

The court's charge instructed the jurors that their verdict must be unanimous, and the application paragraphs also required unanimity. Absent any evidence to the contrary, we presume the jury followed the court's unanimity instruction. *See Curry v. State*, 222 S.W.3d 745, 753 (Tex. App.—Waco 2007, pet. ref'd). Appellant's argument lacks merit. We overrule appellant's sixth issue.

## REFORMATION OF THE JUDGMENT

Finally, appellant raises two issues in which he contends the judgment needs to be reformed. His first issue involves recitations regarding the enhancement pleas and findings. The judgment indicates that appellant pleaded "true" to two enhancement paragraphs and that two enhancement paragraphs were found to be true. Appellant argues he is entitled to have the judgment reformed to show there were no enhancement pleas or enhancement findings.

The State agrees with appellant's request to reform the judgment regarding a second enhancement paragraph. It maintains the judgment entries related to the first enhancement paragraph are correct.

There was only one enhancement paragraph in the indictment. It alleged appellant had a June 2012 conviction for burglary of a habitation out of Dallas County. On cross-examination during the guilt/innocence phase, appellant admitted that he was convicted of burglary in June 2012 in Dallas County. At the punishment phase, the State offered into evidence a Stipulation of Evidence in which appellant stipulated that he was convicted of the 2012 burglary alleged in the enhancement paragraph. After both sides rested on punishment, the judge stated he was ready for arguments. The prosecutor asked about the enhancement and defense counsel asked if the judge was going to do the arraignment. Then the court went off the record. When back on the record, the parties gave their closing arguments. There was no on-the-record arraignment of appellant, and the reporter's record does not contain appellant's plea to the enhancement allegation. Nor did the judge make an oral finding regarding the enhancement paragraph.

Absent an affirmative showing to the contrary, recitals in a judgment create a presumption of regularity and truthfulness. *Breazeale v. State*, 683 S.W.2d 446, 450–51 (Tex. Crim. App. 1984) (op. on reh'g). When the punishment phase of trial is held before the trial court, as in this case, the code of criminal procedure does not mandate the reading of the enhancement paragraphs and the receipt of the defendant's plea to the enhancement paragraphs. *Lopez v. State*, 452 S.W.3d 425, 428 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Davis v. State*, 970 S.W.2d 747, 749 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Garner v. State*, 858 S.W.2d 656, 659 (Tex. App.—Fort Worth 1993, pet. ref'd). Nor is the defendant required to state an oral plea to enhancement paragraphs on the record if he has previously stipulated to the allegations in the enhancement paragraphs. *Lopez*, 452 S.W.3d at 429; *Garner*, 858 S.W.2d at 659. In addition,

–11–

when the court decides punishment, the court is not required to read its finding concerning the enhancement paragraph to the defendant.  *Garner*, 858 S.W.2d at 659.  Although it is preferred that trial courts read the enhancement paragraphs orally and find them to be true or not true on the record, a trial court does not err by not doing so as long as it appears from the record that the court found the enhancement true and entered the sentence accordingly.  *Seeker v. State*, 186 S.W.3d 36, 39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (finding of true in judgment is not inconsistent with oral silence concerning finding).

Appellant stipulated in writing that the enhancement allegation was true.  He has not overcome the presumption that the recitations in the judgment regarding his plea of true and the court's finding of true regarding the first enhancement paragraph are correct.  We cannot say the same for the recitals regarding a second enhancement paragraph, as there was not a second enhancement paragraph in the indictment.  This Court may modify the trial court's judgment to make the record speak the truth when it has the necessary data and information to do so.  *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–8 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).  Accordingly, we modify the trial court's judgment to delete the references to appellant's plea of true to a second enhancement paragraph and the court's finding of true on a second enhancement paragraph.  We sustain appellant's first issue in part and overrule it in part.

In issue two, appellant asks us to delete the deadly weapon finding in the judgment.  He acknowledges the jury found him guilty as charged and that the use of a deadly weapon was an element of the offense.  He nevertheless argues the trial court had discretion to decline to make the finding.  The cases appellant cites in support of this argument did not involve jury trials.  *See Guthrie-Nail v. State*, 506 S.W.3d 1, 2 (Tex. Crim. App. 2015); *Hooks v. State*, 860 S.W.2d 110, 111 (Tex. Crim. App. 1993).  When a jury makes an affirmative deadly weapon finding, the trial

court has a mandatory duty to enter a deadly weapon finding in the written judgment. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.054(c); *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988); *Johnson v. State*, 233 S.W.3d 420, 424 (Tex. App.—Fort Worth 2007, pet. ref'd). The indictment alleged that appellant used or exhibited a deadly weapon. The jury found appellant guilty as charged in the indictment. The jury therefore made an affirmative finding of a deadly weapon. *See Guthrie-Nail*, 506 S.W.3d at 4; *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985). The trial court had no discretion to decline to enter that finding in the judgment. We overrule appellant's second issue.

As modified, we affirm the trial court's judgment.


/Ada Brown/
ADA BROWN
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b).

180172F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

DAVID S. HERNANDEZ, Appellant

No. 05-18-00172-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1800047-N.
Opinion delivered by Justice Brown,
Justices Bridges and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

After "Plea to 2nd Enhancement/Habitual Paragraph:," "N/A" is substituted for the word "True."

After "Findings on 2nd Enhancement/Habitual Paragraph:," "N/A" is substituted for the word "True."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 5th day of August, 2019.